## Case No. 10,489.

### The OLIVE BAKER.

[4 Ben. 173.] [1]

District Court, S. D. New York.   May, 1870.

COLLISION IN NEW YORK HARBOR—TUG AND TOW —INEVITABLE ACCIDENT.

1. A barge, while under tow, lashed to the side of a tug, was injured by a collision with a vessel lying at a dock. On the part of the tug, it was claimed, that the collision was caused by the slackening of the bow line between the barge and the tug, by some one in charge of the barge, against the will of the master of the tug, whereby the tug had not full control of the barge: that another tug, passing close by the tow, raised a swell, which, with the tide, gave the barge a sheer towards the dock, which the tug was not able to check, owing to the slackening of the bow line: and that the collision was caused by inevitable accident: *Held*, that, as the tug had acquiesced in the slackening of the bow line, she became responsible for whatever consequences resulted from that arrangement.

[Cited in The Sweepstakes, Case No. 13,687.]

2. That the tide was known and ought to have been calculated for, and the effect of the passing of the other tug ought to have been guarded against.

[Cited in The Merrimac, Case No. 9,478.]

3. That the circumstances, therefore, did not make out a case of inevitable accident.

In admiralty.

Beebe, Donohue & Cooke, for libellants.
Scudder & Carter, for claimants.

BLATCHFORD, District Judge. The libellants, as owners of the barge Halleck, sue the steam propeller Olive Baker, to recover the sum of $1,200, as the damages sustained by them in consequence of injuries caused to the barge, while she was being towed by the

---

[1] [Reported by Samuel Blatchford, Esq.]

[2] [Reported by Hon. William Cranch, Chief Judge.]

[1] [Reported by Robert D. Benedict, Esq., and here reprinted by permission.]

Olive Baker, on the 17th of August, 1868, from the foot of Bridge street, in Brooklyn, to the Wallabout Bay, around the upper end of the Cob dock. The barge, while under tow, and lashed to the starboard side of the Olive Baker, was carried across the entrance to the bay, and to the side opposite the Cob dock, and her bow struck against the side of a heavy ice boat lying at a dock at Williamsburg, so as to inflict considerable damage upon the barge. The libel alleges, that the injury was caused solely by the fault of the Olive Baker. The answer alleges, that, after the Olive Baker and the barge had started on their trip, some one having charge of the barge slackened her bow line, against the will of the master of the Olive Baker, whereby the Olive Baker had less control of the movements of the barge than she otherwise would have had; that, when the Olive Baker, with the barge in tow, reached the entrance to Wallabout Bay, the tide was running out and against the Olive Baker; that the channel was narrow, and, as the Olive Baker was attempting to enter the bay, a tug passed rapidly by her; that the water from the wheel of such tug came against the starboard bow of the barge; that the force of the tide and of such tug on the Olive Baker was so great that, without any fault on the part of those navigating the Olive Baker, she took a sudden sheer across the narrow channel, towards an ice boat lying at or near the shore; that, in order to prevent the Olive Baker and the barge from colliding with the ice boat, the Olive Baker was at once backed, but, as she had not complete control of the barge, after the slackening of the bow line, the barge continued to go forward until the bow line was straightened, and, when it was so straightened, it parted and allowed the barge to collide with the ice boat; and that such collision was caused by inevitable accident.

This defence resolves itself into two matters—the slackening of the bow line of the barge against the will of the master of the Olive Baker; and the action of the tide and the tug, causing the Olive Baker to sheer and necessitating her backing, and causing the slackened bow line to part, and thereby bringing about the collision, through inevitable accident.

In regard to the slackening of the bow line, to whatever extent it was slackened, if it was slackened at all, the captain of the Olive Baker testifies, that he slowed his boat down while the captain of the barge was slackening the line, during the trip, and before the entrance off the upper end of the Cob dock was reached, and that, after the line had been slackened and again fastened, the Olive Baker went ahead again. The Olive Baker, in undertaking to tow the barge, made herself responsible for any arrangement of the towing lines that was known to and acquiesced in by her. Whatever slackening of the line took place in this case, was acquiesced in by the Olive Baker. There were three lines—a

bow line, a tow line midships, and a stern line, the tow line belonging to the Olive Baker and the other two lines to the barge. The evidence is satisfactory, and comes from those on the Olive Baker, that, when the Olive Baker was backing, before the collision, and in order to prevent it, although the bow and stern lines parted by the backing, the Olive Baker afterwards brought up on the tow line and backed on that, and the collision occurred after that. The parting of the bow line alone is set up in the answer, and the parting of that is attributed to its having been slackened. The evidence shows that it was a new and strong line. The headway of the Olive Baker and the barge were very great when the Olive Baker started to back, and the line undoubtedly snapped from the sudden strain upon it, the barge going ahead and the Olive Baker backing. As the tow line did not break and the Olive Baker brought up on it, and the other two lines parted before the tow line was brought up on, it would seem, that the tow line must have been more slack than either of the other two lines, after the backing commenced. But, for the condition of slackness of all the lines, the Olive Baker was, on the evidence, responsible, and, in so far as the collision was promoted by the parting of the bow line through its slackness, the Olive Baker, being responsible for such slackness, is responsible for the parting and its consequences.

As to the joint action of the tide and the tug in producing the accident, the evidence shows, that the tug, being light and not having anything in tow, was coming up from behind the Olive Baker. The tide was ebb and the Olive Baker was running against it. The barge was down by the stern and towed hard. The pilot of the Olive Baker saw the tug coming up on the starboard side of the barge, the barge being on the starboard side of the Olive Baker. The stem of the barge projected from ten to fifteen feet ahead of the stem of the Olive Baker, and the stern of the barge extended some ten feet in the rear of the stern of the Olive Baker. The bows of the two boats were pressed in together, so that their sterns lay out from each other. As the tug was coming up, the captain of the Olive Baker, who was her pilot, and was at her wheel in her pilot house, blew a signal of two blasts of his steam whistle, indicating that he desired the tug to go to his port side. The tug made no reply, but went on. When the tug had got alongside of the barge, and was passing between it and the face of the Cob dock, so close to the barge that she scraped the barge as she passed, and so close to the dock that there was, as the captain of the Olive Baker says, only two and a half feet distance betwen the tug and the dock, the captain of the Olive Baker ported his helm, so as to crowd the tug still more, and tend to throw the head of the barge and of the Olive Baker to the right, into the bay, and in the direction in which the Olive

Baker and the barge were bound, to reach their destination. The captain of the Olive Baker says, that, the water being shoal, the suction caused by the tug, as she passed, caught the stern of the barge and drew it towards the corner of the dock, and thus threw the head of the barge away from the entrance to the bay. The theory is, that this force and that of the tide running out of the bay, against the starboard bow of the barge, counteracted the effect of the porting by the Olive Baker, and caused her to shoot across the entrance and against the ice boat on the other side. As soon as the captain of the Olive Baker saw that the head of the barge was being thrown away from the entrance to the bay, he stopped and backed his engine, it having before been slowed, under one bell. I can see nothing, in all this, of inevitable accident. It is in proof, that the captain of the barge, when he saw the tug trying to run on the inside of him, called the attention of the captain of the Olive Baker to the fact that he ought to be careful lest the barge should be damaged, and that the captain of the Olive Baker replied that he knew his own business. I think there was, in the evidence, a strife between the Olive Baker and the tug as to which should have the inside and, therefore, the shorter line into the bay. The Olive Baker should have gone further out when she saw that the tug had refused to go outside. There was room enough for the Olive Baker to have done so by starboarding her helm. She could have stopped and reversed sooner. The tide was known and should have been calculated for, and the effect of the rapid passing by of the tug in such close proximity ought to have been known and guarded against. The barge was wholly at the mercy of the Olive Baker, and the latter is, I think, chargeable with the consequences of the collision.

There must be a decree for the libellant, with costs, with a reference as to the damages.