## THE JAMES BERWIND.[1]

## THE CITY OF NEW YORK.

## THE YOUNG AMERICA.

## MOORE v. THE CITY OF NEW YORK AND TWO STEAM-TUGS.

## DALY, Adm'x, v. PENNSYLVANIA R. Co.

*(District Court, S. D. New York. January 2, 1891.)*

1. COLLISION — STEAMER AND TOW — TOWAGE SIGNALS — DUTY TO ANTICIPATE TOW — DUTY OF TUGS TO SIGNAL FROM TOW.

   As the steamer City of New York was coming down the East river, preparatory to rounding the Battery, about 7 : 30 o'clock A. M., she ran suddenly into a dense fog. A fleet of canal-boats in tow of two tugs, on a hawser of 400 or 500 feet, was at the time moving slowly from the bay towards pier 1, North river, and was stretching nearly one-third of the distance across the mouth of the East river. The tugs, two or three points on the steamer's starboard bow, were blowing signals indicating a tow. No signals were given by the tow. The steamer sank one of the canal-boats, and its owner was drowned. *Held*, that the fact of the frequent presence of such tows in that vicinity, coupled with the sudden nature of the fog, made the inattention of the steamer to towing signals only three or four points on her starboard bow, and her failure to anticipate a tow behind them, and to stop before it came in sight, a fault contributory to the collision.

[1] Reported by Edward G. Benedict, Esq., of the New York bar.

**2. SAME.**
  The tugs in charge of the canal-boats were in fault for not providing that signals should be sounded from the tow, as well as from the tugs, when crossing the East river with a heavy tow, about 900 feet, in a thick fog, and at an hour when the Sound steamers were known to be due.

**3. TOWAGE—FOG—WHEN TOW EXEMPT FROM SIGNALING.**
  A large fleet of boats lashed together, with no motive power of their own, and no appliances for giving signals, in tow of a tug, and absolutely in its charge, should be treated as a single mass or unit as respects signals, and the duty of giving the necessary signals from such a tow, on account of its length, in case of fog, devolves solely upon the tug.

**4. SAME—STATUTORY RULES.**
  There is no statutory rule requiring signals to be given by a large fleet of canal-boats in tow in a fog.

In Admiralty. Suit for damage by collision, and suit to recover $5,000 for death of plaintiff's intestate.

*McCarthy & Berier*, for libelants Moore & Dály.

*Wing, Shoudy & Putnam*, for the City of New York.

*Robinson, Bright, Biddle & Ward*, for steam-tugs Young America and James E. Berwind.

BROWN, J. At a few minutes past 7 o'clock on the morning of February 14, 1890, as the steam-boat City of New York, a side-wheel steamer plying between New London and New York, was rounding the Battery in coming out of East river in a dense fog, she came into collision with a fleet of canal-boats that had come up the bay, and was making towards pier 1 in the North river, in tow of the Young America and the James E. Berwind, and damaged two of the boats, causing the Daly to sink, and drowning the owner, who was on board. The second libel was filed to recover damages for this loss of life; the first, for damages to the canal-boat Western Star, which was immediately behind the Daly in the tow. There was not fog enough to cause much difficulty to the tow until she had nearly reached Governor's island, nor to the steamer, until she had reached Thirty-Fourth street. The weather then became thick. At the time of collision neither shore nor any landmark was visible from either vessel. In 10 minutes afterwards, the fog had considerably cleared up. For the steamer, it is contended that she was proceeding as slowly as possible, going under one bell only when below Thirty-Fourth street, and alternately stopping her engines, and working ahead, at intervals. The tide was strong ebb. Shortly before the collision, she passed under the stern of one of the South ferry-boats, that was crossing towards New York, with which she exchanged signals. She contends that no signals were blown by the tugs, or from the tow of canal-boats; and, if such signals had been blown, they would have been heard, and the collision avoided. The tow was not perceived until, according to the estimate of her officers, within 100 or 200 feet, when the steamer, they say, instantly reversed her engines. According to their estimate, she was making sternway in the water at the time of collision; the Daly being swung upon the steamer's stem through the effect of the North river ebb, which the tugs and tow were crossing, towards the slacker

water abreast of Castle Garden. The testimony of many witnesses, however, from the tugs and the tow leaves no doubt in my mind that signal whistles of three blasts, indicating a tow, were blown from the tugs, though no whistles were given from the tow, or from the vicinity of the tow, except a signal horn, blown by a woman on board of one of the canal-boats, when she saw the City of New York very near, too late, as I find, to be of any service.

It is extremely improbable that in a fog so dense as this there were no other whistles sounding than those of the South ferry-boat. The sounding of the bell on Governor's island, of the bells at the other ferries, and of the whistles from various other boats, as testified to by so many witnesses, accords with ordinary experience. The only explanation that can be given of the testimony of the officers of the City of New York that they heard none of these signals is that none of them seemed to them at the time to call for attention, and that they were therefore immediately forgotten. The steamer, coming down with the ebb-tide, itself running some three knots, though her own motion through the water was slow, was approaching the tug pretty rapidly; and it is quite possible that the whistles of the tugs, probably some three points on the starboard bow of the steamer, might seem to them out of the way of danger. The signals, however, that the tugs were certainly blowing—namely, three blasts—indicated a tow; and this, and the further fact that tows of precisely that character, of four or five tiers of boats, or more, upon a hawser of 400 or 500 feet, stretching, in all, nearly 1,000 feet, and going the same course as this tow, are a common and every-day occurrence, make it impossible to exempt the steamer from blame for inattention to signals three or four points to starboard. The very fact that the fog had come on suddenly made it natural and probable that the usual tows coming up the bay would be caught in it. I must hold the steamer, therefore, chargeable for not noticing these whistles of the tugs, and not anticipating the tow behind them, and stopping before it came in sight. Had the steamer expected this tow where it was encountered, she would have had no difficulty, as her officers admit, in avoiding it.

I think the tugs, also, must be held liable as contributing to the accident, for not providing that fog-signals should be sounded from the tow, as well as from the tugs, when crossing the East river from Governor's island, in so thick a fog at that time in the morning. The tow was taken across waters most dangerously exposed to collision, and at a time when several of the Sound steamers were known to be due, all of which would directly cross the path of the tow. The progress of the tow was very slow, occupying at least half an hour in crossing these dangerous waters, and stretching one-third of the whole distance across to Governor's island. In such a situation, reasonable prudence, aside from any express rule, required some signal to be given from the tow to locate its position, and to assist other vessels in avoiding it. The City of Alexandria, 31 Fed. Rep. 427, 429; The Peshtigo, 25 Fed. Rep. 489; The Raleigh and The Niagara, 41 Fed. Rep. 527. In the cases of The City of Alexandria and of The Peshtigo, supra, the boats in tow were held chargeable

with fault **for not** giving signals to indicate their places in the fog. But both these boats had means of giving such signals, and both were, in part, at least, responsible for the navigation. In the former case, the dredge had a steam-whistle, and the control of the tug; in the latter, the barge was steered by her own helm, and she was held for one-third of the loss. In cases like the present, where numerous boats are fastened close together into a compact mass, have no motive power either of steam, oars, or sails, and no helm or steering power of their own, and no appliances for giving signals, and take no part whatsoever in the navigation, but are absolutely in charge of the tugs, and under their control as bailees for the time being, so far as their navigation is concerned, when additional signals beyond those expressly required by the rules become necessary in fog on account of the length of the tow or hawser, (which the tug alone determines and controls,) the duty of giving such additional signals rests, I think, upon the tug exclusively, and not upon the tow. All such signals are incidents of the navigation, and are duties of navigation; and when the tug takes, as in this case, the whole charge of the navigation, she takes it with all its incidents and burdens, and the duty to give the requisite signals while she is actually navigating the tow rests, I think, on her alone. *Sturgis* v. *Boyer*, 24 How. 110, 122–125; *The Connecticut*, 103 U. S. 712. Although one or more persons are usually on board of such boats while they are being towed from one place to another, they are not there for any purpose of navigating or of signaling. As observed in *Sturgis* v. *Boyer*, *supra*, "from the nature of the undertaking, and the usual course of conducting it," such persons do not take, and are not expected to take, any part in the navigation, or in the sounding of signals. The canal-boats in the present case do not fall within any express statutory rules requiring them to give signals. They are not within the last clause of section D of rule 15, (Rev. St. § 4233,) because the boats were not at anchor nor moored; nor within the first clause, because they were not themselves "navigating by hand-power, horse-power, sail, or by the current." Tows like the present first began to come into use in 1875, *i. e.*, since the above provision of the Revised Statutes, and the act of 1871, from which it is derived, (16 St. at Large, 454,) were enacted. Those provisions have never been construed as applicable to such boats while in tow and exclusively in charge of a tug. Such signals, moreover, from a multitude of boats in motion, and all lashed together, would not allow any intervals of silence, such as the statute contemplates, and such as is absolutely necessary in order to hear other vessels, and navigate safely in reference to them; and they would therefore violate the purpose of all signals. For the purpose of signaling, such a tow as this, in the absence of any statutory requirements, should be treated as a single mass or raft of boats, and as much a unit as a raft of logs. Signals given from a single station on the tow, or along-side of it, would answer all needs and avoid all confusion; and such signaling by one for the whole, while in course of navigation, must necessarily fall upon the tug, as the one in charge of the whole, and answerable for all.

Decree for the libelants against the City of New York for one-half the damages, and the Young America and the James E. Berwind for the other half, with costs. The damages to the administratrix for loss of the life of her husband is fixed at $5,000. As to the damages to the Western Star, if not agreed upon, a reference may be taken.