THE CITY OF NEW YORK.

THE JOHN E. BERWIND.

THE YOUNG AMERICA.

MOORE *v.* THE CITY OF NEW YORK AND TWO STEAM-TUGS.

*(Circuit Court of Appeals, Second Circuit. December 14, 1891.)*

COLLISION—FOG—MODERATE SPEED—TOWAGE—DUTY OF TOW TO SOUND FOG SIGNALS.
The steamer City of New York, going down the East river, ran into a fog before rounding the Battery. A tow some 1,000 feet long, in charge of two tugs, was proceeding from Amboy to Jersey City, and was at the time of collision at the intersection of the North and East rivers, below the Battery. The tugs were sounding fog signals. No signals were given from the tow, except that a woman in a rear boat of the tow blew a horn when she discovered the steam-boat. The latter, when she first saw the tow, was moving at the rate of six miles an hour; and, though she at once reversed, she struck and sank one of the canal-boats. *Held,* that the steamer's speed was not moderate, as required by rule, and that she should have heard and acted upon the signals of the tow, and was in fault for not doing so. *Held, also,* that, as the tugs were performing all their statutory duties, they were not guilty of negligence because no signals were given from the tow. 44 Fed. Rep. 693, reversed.

Appeal from the Circuit Court of the United States for the Southern District of New York.

In Admiralty. Suit by Moore to recover for the loss of a canal-boat in collision with the steam-ship City of New York while the canal-boat was in tow of the tugs Young America and John E. Berwind. The district court held all the steamers in fault, (44 Fed. Rep. 693,) and their owners each appealed. Reversed.

*Wing, Shoudy & Putnam,* (*Charles C. Burlingham,* of counsel,) for the City of New York.

*Robinson, Bright, Biddle & Ward,* (*Henry Galbraith Ward,* of counsel,) for the steam-tugs.

*McCarthy & Berier,* (*Edwin D. McCarthy,* of counsel,) for Moore and Daily.

Before WALLACE and LACOMBE, Circuit Judges.

WALLACE, Circuit Judge. The libel in this cause was filed by the owner of the canal-boat Western Star against the steam-boat and the two steam-tugs to recover the damages occasioned by a collision between his canal-boat, while she was in tow of the two tugs, with the steam-boat. The district court adjudged the steam-boat and the two tugs jointly in fault for the collision, and condemned them for the damages sustained by the libelant. The owner of the steam-boat and the owner of the two tugs both appealed from that decree. The question now to be determined is whether the steam-boat was solely in fault, or the tugs were solely in fault, or whether both were in fault. The collision took place between Governor's island and the Battery, at the intersection of the East river with the North river, a few minutes after 7 o'clock in the morning of

February 14, 1890. The tugs were proceeding from South Amboy to Jersey City, having in tow 14 canal-boats and barges arranged in 4 tiers. The tows were on a hawser 80 fathoms long, and averaged about 100 feet in length each, and there was about 15 feet of line between each tier. Thus the tugs and tows stretched over a distance of nearly 1,000 feet. The tide was strong ebb. The tugs were trying to get the benefit of the eddy between the tides of the two rivers below the Battery. They were going very slowly,—not over a mile and a half an hour,—and were maintaining proper fog signals to indicate that they were proceeding with a tow. A woman, who was on the rear boat of the tow, saw the steam-boat a moment before the collision, some two or three hundred feet away, and blew a horn to her several times before the collision. The steam-boat was coming out of the East river, bound for her slip at New York in the North river, on one of her usual trips from New London. Just after reaching the North river tide, she struck the starboard boat of the third tier of the tow, sinking her almost immediately. She had very shortly before stopped to avoid a ferry-boat which passed across her bows, and thereupon immediately p ·eeded again at half speed. She was going through the water at 6 or 7 miles an hour when she discovered the tow, and then immediately reversed her engines, and did all she could to prevent collision. At half speed she could not be brought to a stand-still before running twice her length, or a distance of about 630 feet. For 5 or 10 minutes before the collision the fog had been so dense that vessels were not visible more than 250 or 300 feet away. The steam-boat did not see the tow until she got within about 100 feet of the vessel she struck. The theory of her witnesses is that she did not hear the fog signals of the tugs, nor the horn which was sounded by the woman on the rear boat.

The learned district judge, as appears from his opinion, condemned the steam-boat because she was negligent in not hearing the fog signals of the tugs, and not anticipating the tow behind them and stopping before it came in sight, and condemned the tugs for negligence in not giving fog signals from the boats in tow while crossing the East river. 44 Fed. Rep. 693. We differ with the district judge as to the speed of the steam-boat at the time she discovered the tow, believing, not that she was going very slowly, but that she had regained very nearly her full half speed, and was going at such speed that she could not be brought to a stand-still within twice the distance at which another vessel could be seen in so dense a fog. In this view of the facts, she was not going at the moderate speed in a fog which the statute requires. We are not quite satisfied that she did not hear the whistles of the tugs, and did not proceed upon the assumption that the tow was to the northward of her path; but, if she did not hear the whistles, she ought to have heard them, in view of their proximity and the atmospheric conditions. As she should have heard them, and understood their significance, she is culpable to the same extent as she would be if she had actually heard them and disregarded them.

We do not think the tugs were guilty of any negligence which was contributory to the collision. Concededly, they performed all their

statutory duties. What signals should they have given from the boats or barges? Should it have been by a mechanical fog-horn or a bell? The one would have indicated the presence of a sailing vessel under way, and the other of a steam-ship or sailing ship not under way. If either of such signals had been given, and the collision had taken place, it could have been very persuasively urged that the steamboat was misled thereby. From what place in the tow should the signals have been given? If they had been given from the rear end, or from the middle, would not an approaching steam-ship have felt safe in steering between that place and the signals from the tugs? It may be doubted whether the use of any fog signals, not embraced in the code of signals prescribed by statute, and which are intended to give precise and definite information, is legally allowable. It may be doubted whether the giving of fog signals by boats or vessels in tow would tend to diminish the risk of collision; and whether the multiplication of signals would not lead to confusion and misconception. The board of supervising inspectors of steam-vessels, until as late as 1886, seemed to have supposed that they were authorized under section 4412 of the Revised Statutes to prescribe supplementary fog signals for steam-vessels, and did prescribe them for such vessels while towing. Tows like the one in the present case were common, and had been for many years, on the great rivers and in the harbor of New York. Yet the inspectors do not seem to have considered it expedient to make any other regulations applicable to the navigation of such tows than that the steam-vessel should sound the signal of three blasts in quick succession to indicate that she was towing. And it is significant that in the act of congress of August 19, 1890, (26 St. pp. 320, 326, c. 802, art. 15, subd. 2f,) adopting, among other things, the code of fog signals devised by the international marine conference, while vessels being towed are permitted to give a specified signal, they are not required to give any, and are expressly prohibited from giving any other than that which is required to be given by the towing vessel. It is possible that if some signal had been given in the present case from some one or more of the boats of the tow, or along-side, the steam-boat might have heard it, and so governed her movements as to avoid collision. But the tugs had little time in which to adopt any special precautions, as it was only about five minutes before the collision that the fog became sufficiently dense to require them; and they are not to be held liable merely because, in the light of subsequent events, it appears that something not done might have been useful. The collision would not have happened if the steam-boat had exercised the degree of care required of her under the circumstances of the case. She was aware of the significance of such signals as were given by the tugs, and knew that they denoted the presence of a vessel towing. She knew that similar flotillas of boats, similarly arranged and stretching over as long a distance, were constantly being towed by tugs in the harbor of New York. If she had been reasonably vigilant, she would have heard the fog signals sounded from the tugs; and in that case it would have been her plain duty to reduce her speed to the lowest rate consistent with her steerage-way, and wait before proceeding faster until she had a right to assume that the flo-

tilla was beyond her path. Her own testimony shows that if she had done this she could have been brought to a stand-still, after seeing a vessel in her path 100 feet away, in season to prevent collision. The rule approved by the international marine conference, that "a steam-vessel hearing, apparently forward of her beam, the fog signal of a vessel, the position of which is not ascertained, shall, so far as the circumstances of the case admit, stop her engines, and then navigate with caution until danger of collision is over," merely formulates the duty which had previously been recognized by the courts as incumbent upon steam-vessels under such circumstances. Act Aug. 19, 1890, (26 St. pp. 320, 326, c. 802, art 16;) *The Kirby Hall*, 8 Prob. Div. 71; *The Dordogne*, 10 Prob. Div. 6; *The City of New York*, 35 Fed. Rep. 604. Holding, as we do, that the legal responsibility of the steam-boat is precisely the same, whether she did not hear signals which she ought to have heard and acted upon, or whether she heard them without acting on them, we think the collision is attributable solely to her own misconduct. If the tugs had been in violation of any statutory provision for preventing collisions, it would have to be presumed that the fault was a contributory cause of the disaster. As it is, it is merely a matter of conjecture whether any additional precautions would or would not have prevented the disaster. The decree of the court below is reversed, and the cause remanded, with directions to enter a decree against the steam-boat and her stipulators, for the libelant, for the full amount of his damages, with interest from the date of the report of the commissioner in the district court, and for his costs in the district court and in this court, and for the owner of the tugs for the costs in this court.