HUGHES v. PENNSYLVANIA R. CO. et al.

(District Court, S. D. New York. March 8, 1899.)

1. COLLISION—FOG—FERRY BOAT.
    A ferry boat, which cannot, owing to the public necessities, entirely stop making trips, even when there is a fog which makes navigation dangerous, cannot be held in fault for a collision, if carefully and skillfully handled, and having no notice of any obstruction by signal or otherwise.

2. SAME—TUG AND TOW.
    A tug having in charge eight canal boats, in three tiers, tied them up on reaching a pier in East river at 1 o'clock a. m., to await a favorable condition of the tide before further proceeding. The night was then clear, and the tug left its tow, and engaged in other work, intending to return at 6 o'clock, when the tide would be flood. At 3 o'clock a fog came on, which at 6 was extremely dense. The canal boats were tied by a single line, and tailed down the river with the ebb tide, but when the tide rose they started to swing round, and when about half way, and standing out in the stream, a ferry boat rounding the battery in the fog came into collision with the outside boat of one of the tiers and injured it. *Held*, that it was the duty of the tug, on the coming on of the fog, to return and look after the safety of the tows which were still in her charge, and which she had tied up for her own convenience, and that she took all the risk of changes of weather or tide which might result in their injury.

3. SAME—SIGNALS BY TOW—NEW RULES.
    A tow of canal boats is not required to signal in a fog. If any signal is required from it as a matter of prudence, it belongs to the tug to see that it is given.

This is a libel for collision filed by James Hughes against the Pennsylvania Railroad Company and another.

James J. Macklin, for libelant.
Robinson, Biddle & Ward, for claimants.

BROWN, District Judge. The above libel was filed to recover damages to the libelant's canal boat F. B. Morris, which was run into off pier 5, East river, at about 6:40 a. m. of February 9, 1898, in a dense fog. The canal boat had been brought up during the night previous from South Amboy, being one of a tow of eight canal boats in three tiers, by the defendants' tug Media. The libelant's boat was on the port side of the middle tier. Arriving at pier 5, East river, at 1 o'clock a. m., the head boats had been tied by a single line at the end of pier 5, and in the ebb tide tailed down stream. Libelant's boat was bound for the Harlem river, and the current would not run flood until after 6 a. m. The tow was made fast at pier 5, according to the usual practice, and the tug in the meantime left the tow for the purpose of performing other towage duties, intending to come back and take the Morris up on the flood tide. When the tow was tied up at pier 5 the weather was fair and clear. At 3 a. m. fog began to come on; at 4 there was considerable fog; at 5 it was thick, and after 6 extremely dense, so that neither boats nor lights could be seen more than a few feet distant. The current at this point begins to run flood about 8 hours after the preceding high water, which at Governor's Island on February 9, 1898, was at 10:10 a. m. The Ludvig Holberg, 36 Fed. 917, note. The necessary effect of the flood tide was to turn the tow around, the tail swinging up river slowly and thus bringing the libelant's boat outside in the stream. The collision occurred while the tow was thus slowly swinging around. The fog was so dense that neither boat was seen by the other with sufficient clearness to enable either to be identified at the time; but the defendants' ferry boat, Annex No. 5, was rounding the Battery on a trip from Jersey City to Brooklyn at about half past 6, and had a collision with a canal boat; and from the other circumstances in evidence, I have no doubt that this collision was with the plaintiff's boat. Her collision was at 6:40 according to the ferry boat's time, which agrees sufficiently with the time stated by the witness for the libelant.

I find that the ferry boat was not to blame for this collision. The case is in all respects analogous to that of The Orange, 46 Fed. 408. The reasons there assigned are applicable here. The ferry boat was handled as carefully as possible, picking her way, as was necessary, along the shore in rounding in the East river. As no signals were sounded from the canal boats, she had no notice of the situation of the tow, which at this time was tailing out into the East river over towards the Brooklyn shore to a distance of 300 feet. At the time of collision the ferry boat was heading east, about in line with the New York shore off piers 5 and 6, and the blow was nearly at right angles, showing that the fleet of canal boats was at that time tailing nearly straight across the river—a situation of extreme danger, both for the tow and for other vessels that might be obliged to navigate in so dense a fog.

I must find the Media, however, chargeable with neglect of duty in not returning to take proper care of the fleet of canal boats when the

fog came on. If the custom was sufficient to justify leaving the boats fastened only by a single line to the pier in clear weather, no custom is proved to extend to a neglect to attend to them sufficiently to keep them out of danger in thick fog; nor could any such custom, if testified to, be held valid. The fleet had been tied up at pier 5 for the convenience of the tug. They were waiting to be taken by the Media to their several destinations, at a convenient time of the tide; but in the meantime the canal boats were still in charge of the Media, and she was bound to give them all needful attention, and in leaving them, she took all the risks of lack of needful attention in any changes of weather or tide. Connolly v. Ross, 11 Fed. 342; The Governor, 77 Fed. 1000; The Battler, 55 Fed. 1006; The American Eagle, 54 Fed. 1010; The Thomas Purcell, Jr., 92 Fed. 406. The Media had gone up the North river and taken a tow down to the stakes near Bedloe's Island where she had arrived at 4 a. m. There was fog at that time; enough to warn her of the necessity of attending to the boats that she had left at pier 5, but not enough to prevent her proceeding to take care of them. Other tugs were moving about at that time, and also subsequently in thicker fog. Had the Media gone to pier 5 to attend to the tow, it would have been her duty either to make the tow fast, tailing down as it then was, or to expedite its swing when the current changed, and not to leave the tow for a considerable time, as the evidence shows it was left, in a situation most dangerous to itself and to other vessels. The respondents, as the owners of the Media must, therefore, be held answerable for the damage.

The claim that the canal boats should have signaled while tailing out in swinging with the tide, is not set up in the answer; nor if this fault had been alleged is there any provision in the new articles regulating the navigation of inland waters (30 Stat. 96), or in the rules of the inspectors, which seems to reach this case. If signals from the tow were required as a matter of prudence, it belonged to the Media to be at hand to give them. The Raleigh, 44 Fed. 781, 783. The provision of the old rules by which the tow was there held bound to signal also, has been dropped from the new rules; and the decision in the case of The City of New York, 44 Fed. 693, and Id., 1 C. C. A. 483, 49 Fed. 956, seem to forbid holding the tow answerable for not signaling in this case.

Decree for libelant, with costs.