## THE MANHATTAN.

### THE ALBANY.

(Circuit Court of Appeals, Second Circuit. March 13, 1911.)

### Nos. 207, 208.

COLLISION (§ 11*)—STEAMER AND MEETING TOW—UNLAWFUL TOW—LIABILITY OF TOWS.

The regulations established by the Department of Commerce and Labor, under authority of Act May 28, 1908, c. 212, § 14, 35 Stat. 428 (U. S. Comp. St. Supp. 1909, p. 1100), limiting the length of tows and of hawsers be-tween vessels in tows in inland waters, and prescribing penalties to be imposed on the master of a towing vessel willfully violating such regu-lations, while binding on tugs, are not binding on the vessels in a tow acting in obedience to the orders of the master of the tug, and they can-not be held in fault for a collision between one of their number and an-other vessel, on the ground alone that, following such orders, they had lengthened their hawsers beyond the prescribed limit, at a place not with-in the rule, and could not shorten them after reaching waters within the rule.

[Ed. Note.—For other cases, see Collision, Cent. Dig. § 10; Dec. Dig. § 11.*

Collisions with or between towing vessels and vessels in tow, see note to The John Englis, 100 C. C. A. 581.]

Appeal from the District Court of the United States for the South-ern District of New York.

Suit in admiralty by the Hillside Coal & Iron Company, as owner of the barge Albany, against the steamship Manhattan, the Maine Steamship Company, claimant, and the steam tug North America, the Erie Railroad Company, claimant; and cross-libel by the Maine Steamship Company against the barge Albany and the tug North America. Decree (181 Fed. 229) against each vessel, and also against the barges Hawthorn and Troy, also owned by the Hillside Coal & Iron Company, for part damages, and such company appeals. Re-versed.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Wilcox & Green (Herbert Green, of counsel), for appellant.

Burlingham, Montgomery & Beecher (Charles C. Burlingham, of counsel), for the Manhattan.

Wallace, Butler & Brown (James K. Symmers, of counsel), for the North America.

Before LACOMBE, COXE, and WARD, Circuit Judges.

WARD, Circuit Judge. April 13, 1909, at about 11:15 p. m., in Long Island Sound, about off New Haven, the steamer Manhattan was proceeding from New York to Portland on a course E. ½ N. Approaching her from the eastward was the tug North America on a course W. by S. ½ S., bound from Boston to New York with three light barges in tow tandem, viz., the Hawthorn, Albany, and Troy. The night was dark, but clear. The Manhattan passed the North America and the Hawthorn safely green to green, but came into collision with the barge Albany; and, the barge Troy running up on the Albany, both sustained damage. The Manhattan did not see the lights of the barge, and only discovered the Albany by the reflection of her own masthead light on the Albany's sail, when the collision was inevitable.

The Hillside Coal & Iron Company, which owned all the barges, filed a libel to recover its damages against the Manhattan and the North America; and another libel was filed by the Maine Steamship Company, owner of the Manhattan, to recover its damages against the North America and the barge Albany. The District Judge held the Manhattan, the North America, and the barges Hawthorn and Albany at fault, and, the damages being agreed on, entered one final decree for one-quarter of the damages against the Manhattan and North America, each, and the remaining one-half against the three barges, following the case of The Eugene F. Moran, 212 U. S. 466, 29 Sup. Ct. 339, 53 L. Ed. 600.

We entirely agree with the District Judge in holding the Manhattan at fault for not discovering the lights of the Albany and Troy and not keeping out of the way, and also in holding the North America at fault for violating the regulations established by the Department of Commerce and Labor with reference to hawser towing in the inland waters of the United States. These regulations were enacted in accordance with the act of May 28, 1908, have the force of law, and are as follows:

"Regulations.

"(1) Tows of seagoing barges navigating the inland waters of the United States are limited in length to four vessels, including the towing vessel or vessels.

"(2) Hawsers are limited in length to 75 fathoms, measured from the stern of one vessel to the bow of the following vessel; and should in all cases be as much shorter as the weather or sea will permit.

"(3) In cases where the prescribed length of hawsers is, in the opinion of the master of the towing vessel, dangerous on account of the state of weather or sea, hawsers need not be shortened to that length until reaching the localities named below: (a) Tows bound for Hampton Roads or beyond, before passing Thimble Light. (b) Tows bound up the Chesapeake, to the northward of Baltimore Light. (c) Tows bound up the Delaware, between Fourteen

Foot Bank and Cross Ledge Lighthouses. Hawsers may also be lengthened in the same places, under the same circumstances, when tows are bound out.

"(4) In case of necessity, on account of wind or weather, hawsers of vessels navigating between Race Rock and Gay Head may be lengthened out in the discretion of the master of the towing vessel; but this paragraph shall not apply to Narragansett Bay north of Beavertail Light.

"(5) In all cases where tows can be bunched, it should be done. (a) Tows navigating in the North and East Rivers of New York must be bunched above a line drawn between the Statue of Liberty and the entrance to Erie Basin. When tows are entering Long Island Sound from the westward, the lines may be lengthened out to the prescribed length after passing Fort Schuyler; and when bound for New York from Long Island Sound tows must be bunched before passing Whitestone Point. (b) Tows must be bunched above the mouth of the Schuylkill river, Pennsylvania.

"(6) Section 15 of the act approved May 28, 1908 [U. S. Comp. St. Supp. 1909, p. 1100] provides: That the master of the towing vessel shall be liable to the suspension or revocation of his license for any willful violation of regulations issued pursuant to section fourteen in the manner now prescribed for incompetency, misconduct, or unskillfulness.

"(7) Any violation of these regulations shall be reported in writing as soon as practicable to the board of local inspectors of steam vessels most convenient to the officer or other person who may witness the violation."

Upon leaving Vineyard Haven the master of the tug ordered the barges to pay out plenty of hawser and the Hawthorn paid out 145 fathoms, the Albany 145 fathoms, and the Troy 75 fathoms. He was entitled to exercise his discretion as to the length of the hawser, under article 4 of the regulations, provided he thought the wind and weather made it necessary, while going between Gay Head, some 15 miles west of Vineyard Haven and Race Rock, at the entrance of Long Island Sound, a distance of about 60 miles. But after passing Race Rock, article 2 of the regulations required him to shorten the hawsers to at least 75 fathoms. The District Judge held him bound to shorten hawsers, whether he thought it safe or not, and the regulations do seem to give him no discretion, except as above stated, between Gay Head and Race Rock.

The regulations are, of course, plainly binding on the tug; but the District Judge went further and held them binding upon all the vessels in tow. We do not concur in this construction. The small discretion that is allowed by articles 3 and 4 is given to the master of the tug, and the only penalty provided is against him. It must be presumed that the regulations were drafted with knowledge of the established law that the master of the tug is in sole charge of the navigation. The City of New York, 49 Fed. 956, 1 C. C. A. 483; The Doris Eckhoff, 50 Fed. 134, 1 C. C. A. 494. Of course, the tow may also be liable for failure to perform duties lying upon it in matters under its control. Pederson v. Spreckles, 87 Fed. 938, 31 C. C. A. 308; The Lyndhurst (D. C.) 92 Fed. 681; The Nettie L. Tice (D. C.) 110 Fed. 461.

The towing hawser belonged to the barges, would have to be shortened on them, and could not be shortened unless the tug stopped. The barges were as helpless in respect to shortening hawsers in compliance with article 1, as they would have been in respect to bunching the tow under article 5 of the regulations.

Perhaps the barges would have been at fault if they had expressly agreed to tow with the hawsers in violation of the regulations, or

if they had submitted to doing so in a long course of business, or if they had submitted in a single case where they could have prevented it. This supposes a power to prevent the violation which does not exist in this case. It is said, however, that the failure to protest by signal to the tug establishes an agreement on the part of the barges to violate the law. The purpose of a protest is to put the party responsible for the act protested against a ault, which was not necessary as the tug was plainly at fault. If the barges were also at fault, a protest would not relieve them; and if they were not at fault, it would have been of no use whatever. Any one acquainted with watermen will appreciate how unlikely it would be for the captains of barges in tow to attempt to overrule the master of the tug as to the navigation or that any consideration whatever would be paid to their views.

Because we do not think the barges at fault, the decree is reversed, with directions to the court below to enter a decree awarding to the Hillside Coal & Iron Company, owner of the barges, its damages, with interest and costs, against the Manhattan and the North America and their stipulators, and to the Maine Steamship Company, owner of the Manhattan, one-half its damages, with interest and costs, against the North America and its stipulators.