BERWIND-WHITE COAL MINING COMPANY, Plaintiff, *v.* THE DOWNER TOWING CORPORATION, Defendant.

Municipal Court of the City of New York, Borough of Manhattan, First District, September, 1922.

**Ships and shipping — towing — duty of captain of tug to determine length of line between barges in tow — negligence.**

The duty of the captain of a tug to see that the tow is made  up so as to withstand the perils of navigation includes a supervision of the length and strength of the lines connecting the boats.

Where admittedly the cause of a collision between two barges laden with coal  · which a steam tug owned by defendant had in tow in the North river, was the length of the hawser connecting the two barges, the failure of the captain of the tug to determine, as was his duty, the length of the line between the two barges, renders the defendant liable for the damage done to one of them.

ACTION to recover damages for injuries to barge.

*Macklin, Brown, Purdy & Van Wyck* (*William Van Wyck,* of counsel), for plaintiff.

*Alexander & Ash* (*Edward Ash,* of counsel), for defendant.

SPIEGELBERG, J.  The barges *Eureka* and *Atlantic* are owned by the plaintiff, and the steamtug *Downer* is owned by the defendant.

On July 11, 1921, the *Eureka* collided with the *Atlantic,* and this action is brought by the plaintiff to recover its damages.

The two barges, laden with coal, were lying alongside of one another on the north side of pier 53 in the North river.  The *Downer,* which was under charter to the Cunard Steamship Com-

pany, was ordered to tow the two coal barges to the south side of pier 54 along the steamship *Columbia,* which lay on the opposite side of the slip in which the barges were tied up. The *Downer* took the *Eureka* in tow by fastening a hawser from her bow to the stern of the *Eureka.* The *Downer* backed out of the slip, towing the *Eureka* the distance of the length of the *Atlantic,* and when the bow of the *Eureka* came abreast of the bow of the *Atlantic,* a hawser was fastened from the bow of the *Eureka* to that of the *Atlantic.* On account of the congestion in the slip the *Downer* was not able to proceed stern ahead, but had to reverse and back at times. Due to the movements of the *Downer,* the tow could not be properly controlled, and while the *Downer* was reversing, the *Eureka* collided with the *Atlantic* and was damaged.

The cause of the collision was admittedly the length of the hawser connecting the *Eureka* with the *Atlantic.* What should have been done in this case was to have the *Eureka* and the *Atlantic* so close together that they would practically touch each other, and thus prevent any slack of the line between them.

The question to be decided in this case is whether it was the duty of the captain of the *Downer* to determine the length of the line between the two barges. I am of the opinion that it was his duty, and that his failure in that respect makes the defendant liable for the damage to the *Eureka.*

It has been frequently held that it is the duty of the tug to see that the tow is properly made up, so that it may withstand the perils of navigation. That duty includes a supervision of the length and strength of the lines connecting the boats. *The Quickstep,* 76 U. S. 665; *Berry* v. *Ross,* 94 Maine, 270; *The Propellor Olive Baker,* 4 Ben. 173; *The Pres. Briarly,* 24 Fed. Rep. 478; *The C. W. Mills,* 241 id. 204; affd., Id. 378; *The Teaser,* 246 id. 219.

In *The Quickstep, supra,* the lines connecting the boats were not of sufficient strength, and parted. The court says (at p. 671): " It was the duty of the tug, as the captains of the canal boats had no voice in making up the tow, to see that it was properly constructed, and that the lines were sufficient and securely fastened."

In *Berry* v. *Ross, supra,* the claim was made that the line by which the tow was attached to the tug was of insufficient length considering the nature of the channel and the risks liable to be encountered, and that the line was improperly attached. The court said (at p. 277): " It is the duty of the master of the tug, as the captains of the tow have no voice in making up the tow, to see that it is properly constructed and that the lines are sufficient in quality and length and securely fastened. This is his duty

whether the tug furnish the line to the tow or the tow to the tug. In the nature of employment, the officers of the tug can tell better than the man in the tow what sort of a line is required to secure the vessels in tow and to keep them in position."

In *The Propellor Olive Baker, supra,* the collision was caused by the slackening of the bow line between the barge and the tug by someone in charge of the barge, and it was held that as the tug had acquiesced in the slackening of the line, she became responsible for whatever consequences resulted from that arrangement.

In *The Pres. Briarly, supra,* it was held that it is the duty of the tug to see that her tow is properly made up with lines of proper strength.

To the same effect is *The C. W. Mills, supra,* where it was said that it is immaterial whether the lines were furnished by the tug to the tow or by the tow to the tug.

In *The Teaser, supra,* it appeared that at the time of the collision the tug was towing the tow with a hawser greater in length than permitted by the government's regulations for navigation. The court held that, as the movement of tug and tow cannot be made under the joint command of the two masters, there cannot be a divided responsibility in such an adventure. In the language of the court, at (p. 223 *et seq.*): " * * * Hence the law imposes upon the tug, not upon the tow, the duty to use a hawser of a length which the law deemed essential to safe navigation. This was a duty imposed solely upon the tug. She could not escape that duty, even as it affected the tow, by yielding to the request of the tow that she break the law. Being in sole charge of the navigation of the tow (*The Manhattan,* 186 Fed. 329, 331) and being solely charged with the observance of laws of navigation, public policy demands that the tug shall be liable to the tow for the consequences of her violation of those rules."

In this case, while the *Eureka* was being towed out, and passing the *Atlantic,* a hawser was fastened between the barges. The hawser was of excessive length. It is immaterial who attached the line. As a matter of fact, it was not done by the captain of the barge *Atlantic,* who was not on the boat at the time, but by an employee of the Cunard Steamship Company. In any event, it was the duty of the captain of the tug *Downer* to arrange how the two barges should be fastened. He should have known the dangers resulting from a slack in the line, and it was his duty to order a different arrangement in the make-up of the tow. When he saw the line he should have at once stopped any further progress of the tow and ordered a different make-up.

The authorities upon which the defendant relies do not relieve

it from its liability. These cases are *The Lyndhurst,* 147 Fed. Rep. 110, and *Riley* v. *Cornell Steamship Co.,* 214 id. 60.

In *The Lyndhurst* the cause of the collision was the failure to put the loop of the hawser carefully over the cleat. At page 112 the court says: " * * * It is also suggested that it is the duty of the tug to itself make fast the lines upon all the vessels which it takes in tow. The authorities cited to support such propositions do not go to that extent." And in the *Riley* case the trouble arose likewise through the failure of properly making fast the hawser.

It was held in both of these cases that it was not necessary for the captain of the tug to send a man on board of each boat to see that the instructions as to the fastening of the towing line were properly carried out. These cases have no application to the facts herein. This is not a case where instructions given by the captain of the tug were violated by the men of the tow. The collision occurred through the improper length of the hawser. The *Lyndhurst* and *Riley* cases are not in conflict with the other authorities. They do not question the rule that the make-up of the tow, including the length and strength of the lines, is solely within the discretion of the tug. What they do hold is that instructions once having been given, the captain of the tug has the right to assume that they will be followed as to details by the captains of the tow. Both cases dealt with the failure of the captains of the tow to carefully adjust the hawser. This is an entirely different proposition than taking the boats in tow with lines that are either too long or too short to properly navigate the tow.

The distinction is well pointed out in *The Edwin Terry,* 162 Fed. Rep. 309. In that case, after reiterating the rule that it is the duty of the tug to make up the tow, the court says: " * * * But the details, which are familiar to every boatman, of making fast the lines which attach his boat to those ahead, behind, or alongside of it naturally and usually are left to those on board the boat so attached."

There is no dispute as to the plaintiff's damages, which are fixed at $334.75, and, accordingly, there is judgment for the plaintiff for said amount.

Judgment accordingly.