## THE McCALDIN BROTHERS.

### (District Court, E. D New York. July 24, 1902.)

**1. COLLISION—MOORED VESSELS—FOG.**

The tug Stone, with three scows, was passing out from North river to the dumping grounds, when she was compelled, by a dense fog, to seek refuge, and made the scows fast to the breakwater on the Brooklyn shore. While there, the tug McCaldin Brothers, also seeking a place of safety, and making her way along the breakwater, came into collision with and injured one of the scows. She was going at such speed that she was unable to stop after coming near enough to see the dock. She was blowing fog signals as she approached, but the Stone, which lay alongside, but a little back of, the scow, made no response, and took no steps to make known her presence or that of her tow. The place was one where it was customary for vessels to find refuge in such weather.

¶ 1. Signals of meeting vessels, see note to The New York, 30 C. C. A. 630.

*Held*, that both tugs were in fault,—the Stone for failing to ring her bell or otherwise answer the fog signals of the McCaldin Brothers, which she must have known was approaching; and the latter for excessive speed under the circumstances.

In Admiralty.  Suit for collision.

Peter S. Carter, for libelants.

James J. Macklin, for claimant.

THOMAS, District Judge.  On February 9, 1900, about 4 o'clock in the morning, the steam tug Stone took three scows on a hawser from Forty-Seventh street, North river, to tow them to the dumping grounds.  Upon arrival near the Battery, a fog suddenly arose, and was of such a nature that the tug landed the scows at the breakwater or seawall at Merchants Stores, Brooklyn, in such a manner that scows Nos. 5R and 6R were headed downstream, while scow No. 10R, headed upstream, lay alongside the wall, the tug being on her port side, with her bow some 40 feet aft of the bow of 10R.  In this position the scows lay, unable to go to sea.  At about half past 9 in the morning the steam tug McCaldin Brothers, having shortly before left her dock in the Atlantic Basin, was making her way along the docks for the purpose of going into Erie Basin, with an alleged speed of about 2½ miles an hour, and came onto the bow of No. 10R, breaking in the heavy forward beam, and doing the injury for which the libel is filed.  The fog was so dense that the McCaldin Brothers did not see the dock until she was within about 40 or 50 feet of it, whereupon she reversed her engines, but her headway was not stopped before the contact.  Hence her speed was such that she could not be stopped if she came upon another vessel, or probably the dock itself.  Although the captain and some others of the crew were in the pilot house of the Stone, they were utterly oblivious and indifferent.  They gave no signals, by bell or otherwise; made no effort to discover vessels that might be approaching the dock, or to give warning of the presence of the tow; and this condition had lasted for about 5½ hours.  The McCaldin Brothers was blowing fog whistles as she approached, but received no response from the Stone.  The scows lay so low in the water that they were less easily discoverable, and, if anything could be seen, it was the smokestack of the Stone, which, as already stated, was some 40 feet abaft the upper end of the scow.  But the density of the fog was such that it is doubtful whether the Stone could have been seen until about the time of the collision.  Considering the density of the fog, the necessity of the Stone and her tow and the McCaldin Brothers to find refuge, the fact that the scows, heavily loaded, lay low in the water, so that they could not be seen at other than a nearby point, that the McCaldin Brothers was advancing at a speed that precluded her stopping when obstructions came in view, and that the tide was slightly ebb, the question is, was the speed of the McCaldin Brothers negligent, and should those on the Stone have taken notice of the McCaldin tug's fog signals?  In The Albany (D. C.) 91 Fed. 805, it was held that the ferryboat Albany was negligent because, with too great speed, she approached the pier where a cattle boat was tied up, and that the cattle boat was not in fault in fail-

ing to give signals, as she had no occasion to expect other vessels at that point. In The Granite State, 3 Wall. 310, 18 L. Ed. 179, it was determined that, where a barge was fast to a wharf, out of the track of other vessels, and moored, as regards place and signals, or want of them, according to the port regulations, and a steamer navigating a channel of sufficient width for her to move and to stop at pleasure collided with the barge, the steamer was solely liable for the damage thus done. The facts of the case in some respects were very similar to those of the case at bar. The collision took place at night, between a steamer and a barge lying low and concealed in the water; but there is one broad distinction between the cases. In the present case the tow was made fast to the breakwater at Merchants Stores, because it was a customary place of refuge; and there was every reason to expect that, with the fog, other vessels would seek safety at or near the neighborhood of that point, making their way along the breakwater, guided by the loom of the dock. The McCaldin Brothers was doing this very thing. She was in trouble on account of the dense fog. She was sounding her fog whistle to protect herself and others, and in her helplessness, as regards the discovery of objects, the most ordinary care required that the Stone should exhibit some slight pains to warn the McCaldin Brothers and guard herself. It is not intended to decide that the Stone should have continued to ring a bell, or give signals of any kind, but that she should have responded to the nearby signals of the McCaldin Brothers by ringing a bell. With three large scows, the Stone was in the very way of incoming vessels, and the warnings of the approaching McCaldin Brothers must have been heard; yet those in the pilot house of the Stone did not use the slightest semblance of care, but remained in a state of indolence and inattention, dangerous to all. Nor does it seem that there was necessity for the McCaldin Brothers to approach the dock at the speed at which she was going, even though it was no more than 2½ miles an hour. Her master knew, or should have known, that he was in very close proximity to the dock. In fact, he saw the loom of the dock when he was some 40 or 50 feet away from the scow, and, as the blow was head on, the tug must have been very nearly parallel to the breakwater. It is urged that the bow of the scow was heading into the stream, but it is quite improbable that the scow made much departure from the line of the breakwater. Experience teaches that tugs approach docks at very much more moderate speed than the McCaldin Brothers was observing, and it comes frequently to the attention of the court that tugs hold themselves with little or slight motion for a considerable time, on such a tide, in proximity to the face of the pier; and there is no doubt that the McCaldin Brothers could and should have approached with less speed.

The owners of the Stone have been brought in under the fifty-ninth rule. It is determined that the libelants should have a decree for their damages against the tug McCaldin Brothers, and also against the owners of the Stone, and that each party defendant should bear one-half of the damages and costs.