THE EXPRESS.

THE S. L. CROSBY.

(Circuit Court of Appeals, Second Circuit. February 10, 1914.)

No. 193.

Collision (§ 72*)—Steamer and Vessel at End of Pier—Excessive Speed in Fog.

A steamer, which was approaching the Brooklyn piers in East River in a fog for the purpose of tying up, *held* in fault for a collision with a scow in a tow which was already lying at the end of a pier, as is the custom of the port in case of sudden fog, for not proceeding at moderate speed, "having careful regard to the existing circumstances and conditions," as required by article 16 of the Inland Rules (Act June 7, 1897, c. 4, 30 Stat. 96 [U. S. Comp. St. 1901, p. 2880]). The tug in charge of the scow also *held* in fault for failing to give some notice of the presence of her tow, which extended for 300 feet across the ends of three piers, when she heard the fog signals of the approaching steamer.

[Ed. Note.—For other cases, see Collision, Cent. Dig. § 102; Dec. Dig. § 72.*

Collision rules, speed of steamers in fog, see note to The Niagara, 28 C. C. A. 532.]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Appeal from the District Court of the United States for the Eastern District of New York.

Suit in admiralty for collision by Albert Bleakly and others, owners of Scow 74, against the steamer Express, the New York, New Haven & Hartford Railroad Company, claimant, with the steam tug S. L. Crosby, the Cornell Steamboat Company, claimant, impleaded. Decree against the Express alone, and her claimant appeals. Modified.

J. T. Kilbreth, of New York City, for appellant.

James J. Macklin, of New York City (De Lagnel Berier, of New York City, of counsel), for appellees.

Amos Van Etten, of Kingston, N. Y., for the S. L. Crosby.

Before LACOMBE, WARD, and ROGERS, Circuit Judges.

WARD, Circuit Judge. December 24, 1910, while the tug S. L. Crosby was proceeding down the East River with three scows in tow tandem, a dense fog arose. The tug hung the tow up at the end of Pier 8 on the Brooklyn shore, where it lay strung out on the ebb tide as far as Pier 10. Subsequently, to make room for a vessel entering the slip between 8 and 9, the tug herself moved to the end of Pier 10 and there made fast. The steamer Express, while rounding the Battery on her way into the East River ran into the same fog and was crowded over by other shipping to the Brooklyn shore, where her master determined to lay up until the weather cleared. She approached the Brooklyn piers diagonally, blowing fog signals as required by law, but did not discover Scow 74 lying at the end of Pier 9 until so close to her that she was unable, by going full speed astern, to avoid collision. The blow was violent enough to do considerable damage to the scow, and those on the Express admit that if she had not struck the scow she would have run into the pier. The libelant filed this libel against the Express to recover the damages sustained by the scow, and the Express brought in the tug Crosby under admiralty rule 59. The District Judge entered a decree in favor of the libelant against the Express, dismissing the petition against the Crosby, with costs.

It is the practice in this harbor for vessels and tows in thick fog to tie up at piers as was done in this case. The only law on the subject of lying at the end of piers is section 879 of the Greater New York Charter (Laws 1901, c. 466), which provides that such vessels may not recover damages for any injury caused them by vessels entering or leaving any adjacent pier. This section does not apply to the situation now under consideration.

We concur with the District Judge in finding the Express at fault for going at too great speed. Article 16 of the Inland Regulations requires vessels in a fog to go at a moderate speed, "having careful regard to the existing circumstances and conditions." These were that in a crowded harbor other vessels would be likely to hang up at the end of piers until the fog cleared away, just as she herself intended to do. The witnesses from the Express testify, as is generally done in similar cases, that she only had just steerage way and could not have

gone slower. Other witnesses state that she was going at a rapid rate, and the injuries to the scow indicate that she could not have been going at dead slow. The District Judge evidently so found, and we see no reason to differ. The rule is salutary, though occasionally involving great hardship, that vessels moving in fog must do so at such a rate as will enable them to stop before striking any vessel which is herself observing the law. The Umbria, 166 U. S. 404, 17 Sup. Ct. 610, 41 L. Ed. 1053.

We think, however, that the tug Crosby was also at fault. She was still in charge of the tow and bound to protect it. The Inland Regulations provide for no signal to be given by vessels tied up at the end of piers in fog. The measure of duty in such cases would seem to depend upon the general law of negligence. In this case those on the Crosby should have acted with ordinary care according to the circumstances. She had hung up her tow, some 300 feet long, so as to occupy the ends of two piers and obstruct two slips. To give the statutory signals might well confuse vessels navigating in the vicinity. All the master of the Crosby claims to have done was to blow an alarm just as the Express loomed up. He must have known that other vessels would be likely to seek a safe berth at this point, just as he himself had done, and should have been correspondingly watchful. When he heard the signals of the Express approaching he should have given her some timely notice of the presence of the tow. This he might have done by hailing, or by using a megaphone, or by giving repeated taps on his bell or toots of his whistle as an alarm signal. We have imposed some such duty on tugs having charge of tows. Hughes v. P. R. R. (D. C.) 93 Fed. 510; Id., 113 Fed. 925, 51 C. C. A. 555; N. Y. O. & W. R. R. v. Cornell S. B. Co., 193 Fed. 380, 113 C. C. A. 306. See, also, McCaldin Brothers (D. C.) 117 Fed. 779.

The decree of the court below is modified, and the court directed to enter a decree in favor of the libelant against both vessels, with costs, half costs of the court below and full costs of this court in favor of the Express against the Crosby.