## THE JERSEY CENTRAL.

### (District Court, E. D. New York. May 26, 1914.)

COLLISION (§ 71*)—MOVING VESSEL AND BOATS LYING AT END OF PIER—EXCESSIVE SPEED IN FOG.

A tug passing down North river in the early morning in a fog, *held* in fault for a collision with a boat, which with three others comprising part of a tow had been tied up at the end of a pier, on the ground that, while working in to make a pier until the weather should clear, she was going at such speed that she could not avoid the collision after she could see the tow. The tug which left the tow there and proceeded on up the river held not in fault for not taking measures to protect it from moving vessels.

[Ed. Note.—For other cases, see Collision, Cent. Dig. § 101; Dec. Dig. § 71.*]

In Admiralty. Suit for collision by Thomas J. Howard against the Steamtug Jersey Central and the Philadelphia & Reading Railway Company. Decree for libelant, against the Jersey Central alone.

Herbert Green, of New York City, for libelant.
James J. Macklin, of New York City, for the Jersey Central.
Pierre M. Brown, of New York City, for Philadelphia & R. Ry. Co.

CHATFIELD, District Judge. The boats had been brought by the Philadelphia & Reading tugs, on the morning of March 14, 1913, up through the Kills and landed in the neighborhood of 4 o'clock on that morning. One of the tugs then went with certain boats up the North river and the other to Gowanus. The Berne, the tug having gone up the North river, was stopped by fog in attempting to come back to the place where the tow had been landed (that is, the Packer dock in Jersey City). She was stopped by dense fog, which delayed her arrival until

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

after the accident. The evidence shows that the accident occurred a short time after 6:15 a. m., and was caused by a blow from the Jersey Central, which had left Eighty-First street, North river, at 6:15, coming down with an ebb tide and encountering light fog until in the neighborhood of pier 50. From there on the fog was dense, and the tug was proceeding under one bell. It was endeavoring to make a pier on the Jersey side, just below the one where the tow had been landed, and was working in with the idea, according to the captain, of tying up if the fog continued so dense that it could not reach the pier to which it was going. The tow had been left with the head tier four abreast and with breast lines to both the inner and the second boat. In fixing these lines the three outside boats had been carried back by the ebb tide so that the inside boat, the Howard Bros., projected above the upper side of the pier and above the bows of the other boats in this first tier about 15 feet. The tug Jersey Central proceeded under one bell, reaching a point some hundred feet from the tow before either the tug or the boats were made out in the fog. She was maintaining a careful lookout, and a signal was given to reverse the engine as soon as the dark object was made out. Her course was both down the river and in towards shore. The helm was put to starboard, but the effect of the backing and the ebb tide and the starboard helm combined did not prevent her running the intervening distance and striking the Howard Bros. a few inches back of the forward corner upon the starboard side. The only evidence of any injury is this blow from the Jersey Central, and the serious effect of that blow may have been due to the particular condition of the Howard; but the survey shows that the deck planks were twisted by the blow, and whether it was delivered by the stem of the vessel or by the bluff of the bow makes no difference.

There being no duty upon the Howard to give fog signals when left tied up at the end of a dock, and her captain being in the cabin at the time, the first finding of fact must be against the Jersey Central, and it must be held that her speed was sufficient, so that she was unable to stop after discovering the stationary object. Whether this stationary object were the other boats in the tow or the Howard or the pier does not affect the question of her losing her headway and, although the two jingle bells after the signal to reverse were given promptly, she yet struck the blow which caused the injuries in question. She must therefore be held at fault. Endeavoring to make a pier or to work inshore, or to do any of the things which she could have been doing at the time, emphasizes the proposition that she realized the presence of other vessels; in fact she testifies that she heard whistles of boats in all directions; she knew that the pier was close by, and she took the risk of proceeding at such speed that she could not avoid contact with another boat. She must also be held to have anticipated that the consequences might be more severe than a mere casual blow. There must be a finding, therefore, that the Jersey Central was proceeding at such a rate in such a manner in fog that the responsibility for collision with a boat at rest, and not negligent on its own part, rests upon the Jersey Central.

Whether under the doctrine of Bleakley v. The Express and The S. L. Crosby, 212 Fed. 672, 129 C. C. A. 208, a portion of the responsibility for the accident should be placed upon the Philadelphia & Reading Company for the failure of its boats to properly police or guard the tow while at rest off the end of the pier needs further discussion. It is apparent from the records of the Weather Bureau that the conditions had been foggy throughout the night, and while the various boats had been able to navigate up to the neighborhood of 6 a. m. in the lower part of the Hudson river, nevertheless the conditions of storm and fog were such before the tug Berne and the tug Wyomissing left this tow that they might reasonably have expected that the fog might thicken instead of lighten, and that if they were not there to protect these boats lying helpless at the end of the pier, they would be responsible for any duty which rested upon them if they were obligated to remain there and to perform that duty.

It was held in the Express Case that where the tug-boat had not yet left the neighborhood of the tow, but was still in charge of the tow and heard the signals of an approaching boat in a fog, and knew from those signals that the approaching boat was within dangerous distance of the tow, and could not learn that the tow was there until it could be sighted, the duty rested upon the tug to give some kind of a warning other than the statutory signal that she was proceeding with a tow in a fog. In other words, the court held that the tug was still actually in charge, and, within a distance where a signal of danger could be given, and was under an obligation to warn off anybody who was apparently running into danger.

The cases of Hughes v. Pennsylvania R. Co. (D. C.) 93 Fed. 510; Id., 113 Fed. 925, 51 C. C. A. 555; New York, O. & W. Ry. Co. v. Cornell Steamboat Co., 193 Fed. 380, 113 C. C. A. 306. The McCaldin Brothers (D. C.) 117 Fed. 779, impose upon a tug, having brought a tow to a certain point and left the tow at that point, the obligation of anticipating any danger that may reasonably be expected to occur if the tow is left. And where, in case of a fog, danger arises from the swing of the tide or some condition that the tug should reasonably have expected and taken care of, the act of the tug in so doing will make her responsible.

But no case is cited which holds that if a tug has left a tow of boats tied up at the end of a wharf, made fast so that they shall not be a menace to navigation, either by their movement or their general position, then the tug bringing the boats to that point must remain there, or leave a watch which shall protect them under all conditions; this is not a case of blocking a slip, although the Howard was projecting somewhat from the line of the other vessels; for the captain of the Jersey Central testifies that he starboarded his helm so as to avoid striking the Howard, and he at that time saw the other boats in the tow, and was running toward them and away from the slip.

There is nothing to indicate that the Jersey Central was trying to run in the slip and was disabled by the fact that the Howard projected further than the other boats.

It would seem that some duty should be placed upon vessels moored at the end of a pier in case of fog to indicate their position to approaching vessels, just the same as they should maintain a light in the darkness; but until there is a duty of that sort upon the vessels themselves, it would not seem that a tug could be held negligent for failing to anticipate when, if conditions arose which would make it safer for approaching vessels to know that boats were lying at the end of a wharf, they should set a watch which would furnish protection to the moored boat if a fog came up. Until some such responsibility is thrown upon the tug it does not seem possible to extend the doctrine of the Express so as to put the protection of the moored boats upon the tug, unless the condition is such at the time the tug leaves, or while the tug is present, as to require it to give warning. Even under the doctrine of the Express and cases cited, the warning is only to a vessel which itself is seen from where it may be approaching.

In a case like the present, where the approaching vessel had warning of the moored boats and knew that there were vessels in the vicinity, and where the fault seems to be that she approached at too great a speed, and also where, at the time the tug left the fleet, it was not yet daylight and it was not evident that the fog might become so dense as to make warning signals from the moored boats necessary, I cannot find the Philadelphia & Reading responsible for a part of the liability, which I think rests mainly on the Jersey Central.

The libelant may have a decree against the Jersey Central, and the libel against the Philadelphia & Reading will be dismissed.