## THE JERSEY CENTRAL.

(Circuit Court of Appeals, Second Circuit. February 9, 1915.)

No. 178.

1. COLLISION &71—LEAVING TOW AT END OF PIER—LIABILITY FOR COLLISION.

Tugs *held* not in fault for leaving some of a fleet of barges composing a tow at the end of Packer Pier, Communipaw, while they distributed others, and not liable for a collision between a moving tug and one of the barges in a fog; it appearing that it was a customary place to leave tows under such circumstances, and that the fog did not set in until later.

[Ed. Note.—For other cases, see Collision, Cent. Dig. § 101; Dec. Dig. &71.]

2. COLLISION &71—TUG AND BARGE AT END OF PIER—FOG.

A tug *held* in fault for collision in a dense fog with one of a number of barges tied up at the end of a pier, for moving at such speed that she could not stop after seeing the pier and barge. The barge also *held* in fault for not making some signal to denote her presence and position in the fog, there being no tug in attendance.

[Ed. Note.—For other cases, see Collision, Cent. Dig. § 101; Dec. Dig. &71.

Collision with or between towing vessels and vessels in tow, see note to The John Englis, 100 C. C. A. 581.]

Appeal from the District Court of the United States for the Eastern District of New York.

This cause comes here upon appeal from a decree of the District Court, Eastern District of New York, holding appellant's tug Jersey Central solely at fault for a collision between said tug and libelant's barge Howard Bros., which was one of a fleet of about 16 barges, 4 abreast, tied up at the end of the Packer Pier, Communipaw, which is a well-known place for tying up and distributing.

The barges had been brought there about 4 a. m. March 14, 1913, by the Philadelphia & Reading tugs Berne and Wyomissing. Shortly after making the barges fast securely, the Berne started up the Hudson river with two of them, and the Wyomissing with two others for the Erie Basin. The Howard Bros. was nearest to the pier of the head tier of 4 in which she lay.

The tug Jersey Central about 6:15 a. m. left Pier 81 North River, bound for dock No. 5, Jersey City, which is below the Packer dock. When about off

Pier 50 North River she ran into a dense fog. She was then about in the middle of the river, and she headed obliquely across to the Jersey shore. She was runing under one bell, but thereafter she kept stopping and going ahead, according as her master heard the whistles from other vessels in his vicinity. While thus feeling her way down, her master saw a dark object directly ahead, not over 100 feet away, which proved to be the Packer Pier. He at once stopped and reversed at full speed, but before his tug could be brought to a full stop the starboard bow of the tug struck the starboard bow of the barge, causing some injury thereto. At the time of the collision neither the Berne nor the Wyomissing had returned from their excursions to deliver the barges they took away.

For opinion below, see 215 Fed. 235.

James J. Macklin, of New York City (James J. Macklin and De Lagnel Berier, both of New York City, of counsel), for appellant.

Armstrong & Brown, of New York City (Pierre M. Brown, of New York City, of counsel), for appellee Philadelphia & R. R. Co.

Herbert Green, of New York City, for appellee Howard.

Before LACOMBE, WARD, and ROGERS, Circuit Judges.

PER CURIAM. [1] There is dispute in the testimony as to weather conditions at the Packer Pier when the two tugs left there. We are not satisfied that conditions were such that they should be held in fault merely for leaving the balance of their tow tied up there while they proceeded to make delivery of individual units. So far as the evidence shows, the tow was made securely fast, with no likelihood of swinging out and obstructing navigation before the return of one or other of the tugs. This method of tying up at that dock and distributing therefrom has been in use for years, and unless there is some reason shown for doing so which does not now appear, we should not be inclined to hold that the company must keep a sentinel tug at the dock till the last barge is removed in anticipation of possible contingencies. For their mere absence at the time of the collision we are not inclined to hold the Philadelphia & Reading Railroad in fault. We are not satisfied that conditions existing when the tugs left were such that they should be held in fault for leaving.

[2] At some time after the tugs had left dense fog set in and a condition arose which has been presented here several times. Several vessels have been tied up at the end of a pier, in such a way as to interfere with the entrance into an adjoining slip, or have swung out with the tide so as to obstruct the fairway, or have been made fast side by side, so that their combined beam has practically extended the pier head a considerable distance into the river; and while these conditions existed a dense fog has shut in, so that their position became invisible to navigating vessels. Reference may be had to Hughes v. Penn. R. R., 113 Fed. 925, 51 C. C. A. 555; The McCaldin Bros. (D. C.) 117 Fed. 779; The P. R. R. No. 5, 181 Fed. 833, 104 C. C. A. 343 (where a single vessel only was moored to the pier); N. Y., O. & W. R. R. v. Cornell Steamboat Co., 193 Fed. 380, 113 C. C. A. 306; The Express, 212 Fed. 672, 129 C. C. A. 208.

It is now established in this circuit that when such a situation exists —at least when there is more than a single vessel at the pier head—and fog signals indicate the approach of another vessel, there should be

sounded some warning of the presence of the obstructing vessels; not navigating or anchored signals, but some other sound, to take the place of sight, whether it be given by beating a pan, or blowing a mouth horn, or using a watchman's rattle or a megaphone. When the tug which had the tow in charge has been at hand, she has been held in fault for not giving such warning. When she is absent, reasonable care and prudence should be exercised by the master of a boat thus left tied up, when conditions indicate that danger threatens. The master of libelant's barge was up and about, he knew how the fleet was tied up, that fog had set in since it had been tied up, he saw nothing of the two tugs which had brought the tow up, and heard nothing in the way of warning from them, although fog signals of navigating vessels were being sounded. The circumstance that he could see nothing of the tugs and heard no sound from them would indicate that they were following the usual custom, distributing the several units of the tow. Under those circumstances we think reasonable prudence would require him to be watchful for the safety of his own boat, and to sound such warning as might indicate her presence to approaching vessels.

Although the Jersey Central was moving slowly, she was not going at a rate of speed which would make it possible to stop when she sighted a stationary object before she hit it. Her master puts the distance at which he sighted the pier at 100 feet, and it seems quite apparent that, if he had not hit the barge, he would have hit the pier. We think the District Judge properly held the tug in fault.

Decree reversed, with half costs of this appeal to appellant against the libelant, and cause remanded, with instructions to decree in favor of libelant against the Jersey Central for half damages, without costs.