### THE BERN.
### THE ST. GABRIEL.

(Circuit Court of Appeals, Second Circuit. April 20, 1917.)

No. 160.

COLLISION ⊙=147—FOG—TOW LYING AT END OF PIER—FAULT OF TUG.

It is the duty of a tug, having charge of a flotilla of barges, lying off the end of a pier in a bay, on hearing the fog signals of an approaching vessel, to give warning in some manner of the presence of her tow, and her failure to do so renders her liable for a collision with one of her barges.

Appeal from the District Court of the United States for the Southern District of New York.

Suit in admiralty by the Pennsylvania Railroad Company, owner of tug P. R. R. No. 14, against the steam tug Bern, the Philadelphia & Reading Railway Company, claimant, and the barge St. Gabriel, Kate Dougherty, claimant. Decree for libelant, against the Bern, and her claimant appeals. Affirmed.

Armstrong, Brown & Purdy, of New York City (Pierre M. Brown, of New York City, of counsel), for appellant.

Burlingham, Montgomery & Beecher, of New York City (Chauncey I. Clark, of New York City, of counsel), for appellee Pennsylvania R. Co.

Before COXE, WARD, and ROGERS, Circuit Judges.

⊙=For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

ROGERS, Circuit Judge. The libel in this suit was filed to recover contribution from the steam tug Bern for damages which the libelant was compelled to pay by reason of a collision between the libelant's. tug, P. R. R. No. 14, and the barge St. Gabriel, in charge of the Bern, at the Packer Dock, Jersey City, on the morning of March 14, 1913. In the District Court the Bern and No. 14 have been held jointly responsible for the damage sustained by the St. Gabriel and the libelant has been allowed to recover from the Bern one-half the amount paid the owner of the St. Gabriel in the suit of Kate Dougherty against tug P. R. R. No. 14. The amount paid under the final decree in the former suit was $3,038.39. The decree in that suit was entered on: January 20, 1914, and on January 5, 1915, this libel for contribution was filed. The Bern was not impleaded in the original suit.

The trial of the present suit consisted in offering the record in the former suit and calling one witness by the Reading Company, a deck hand from the Bern, who testified that he heard no whistles from No. 14. On the morning of the collision the Reading Company's tugs Wyomissing and Bern had tied up a tow at the Packer Dock for the purpose of distributing the several boats in the North and East Rivers. The two tugs left for this purpose. Later a dense fog set in, and the Bern, which had found her way back, was tied up at the dock, and her master had gone to telephone for instructions, leaving a deck hand in the pilot house in charge. The facts may be stated as follows:

The tug P. R. R. No. 14 had left Pier 4, North River, Manhattan, bound for Jersey City. The master of No. 14 was at the wheel, and a lookout was stationed on the bow. The tug proceeded sounding fog signals at intervals and keeping a lookout. When about midstream the fog became more dense; No. 14's engines were stopped, and she proceeded,. alternately stopping and starting her engines. While so proceeding, the lookout made out a low-lying object in the water close under the tug's bow. The tug's engines were reversed full speed, but she came into collision with what afterwards proved to be the barge St. Gabriel at an angle of about 45 degrees. The St. Gabriel was damaged considerably and later sank.

In this thick fog the St. Gabriel and 17 or 18 other boats were hung up off the end of the dock. The tow was made up in 4 or 5 tiers of 4 boats in a tier, and extended down stream across the pier ends for 400 or 500 feet. The St. Gabriel was the starboard hawser boat, with 3 boats between her and the pier end, and was about 120 to 125 feet out in the river. The tug Bern was lying just inside the slip at the head tier of the tow, with her stern lapped about 10 feet on a Lehigh Valley boat, which was lying on the end of the pier. The deck hand, who was in the pilot house and in charge of the tug, admitted hearing several fog signals. He seems to have had no conception that it was incumbent upon him to give any warning of the presence of this obstructing flotilla. He admitted that the Bern was equipped with a fog bell, but he does not seem to have been aware that he was under any duty to use it in the fog conditions which prevailed.

There can be no doubt as to the obligation which rested on the Bern to protect this tow. This court in the Jersey Central, 221 Fed. 625, 137 C. C. A. 349 (1915), stated the law as follows:

"It is now established in this circuit that when such a situation exists—at least when there is more than a single vessel at the pier head—and fog signals indicate the approach of another vessel, there should be sounded some warning of the presence of the obstructing vessels; not navigating or anchored signals, but some other sound, to take the place of sight, whether it be given by beating a pan, or blowing a mouth horn, or using a watchman's rattle or a megaphone. When the tug which had the tow in charge has been at hand, she has been held in fault for not giving such warning. When she is absent, reasonable care and prudence should be exercised by the master of a boat thus left tied up, when conditions indicate that danger threatens."

See, also, The Express, 212 Fed. 672, 129 C. C. A. 208 (1914).

In the instant case the Bern, which had the tow in charge and was bound to sound some warning of the presence of the obstructing tow, did nothing. Under these circumstances, the District Judge properly held the tug in fault, and that the libelant was entitled to contribution. Decree affirmed.