## THE WASHINGTON.

(Circuit Court of Appeals, Second Circuit. March 13, 1918.)

No. 168.

1. COLLISION ⊚⟹100(1)—LIABILITY—VESSEL IN TOW.

A ferryboat, which in a fog collided with a barge in the last tier of a tow, *held* wholly at fault; the tug towing the barges having given the required signals, which were heard by the ferryboat, and the faulty navigation of the tug prior to the accident not having contributed thereto.

2. COLLISION ⊚⟹100(1)—TOWS—ANTICIPATION.

So long as 500-foot tows are not illegal in New York Harbor, they must be reckoned with by vessels navigating in a fog, after hearing signals indicating the presence of a tow.

3. COLLISION ⊚⟹100(2)—FOG SIGNALS—NEGLIGENCE.

Where a tug in charge of a tow gave the whistle signal provided by Navigation Rules, art. 15 (Act June 7, 1897, c. 4, § 1, 30 Stat. 99 [Comp. St. 1916, § 7888]), a barge being towed, which could not whistle, is not guilty of negligence in failing to give other signals in a fog; the prescribed signal excluding all others.

Appeal from the District Court of the United States for the Eastern District of New York.

Libel by Patrick Ward against the ferryboat Washington, claimed by the Pennsylvania Railroad Company, and the Cornell Steamboat Company. From a decree for libelant against the Washington, claimant appeals. Affirmed.

The Senator Rice, a tug belonging to the Cornell Steamboat Company, left a pier in the North River bound to Gowanus, in clear weather, with a hawser tow of six boats in three tiers. The hawsers were of not over 100 feet, making the probable length of the flotilla from bow of tug to stern of last tier at least 500 feet. Shortly after leaving, a dense fog set in, whereupon the Rice rounded to, and drifted stern first down river with the ebb tide, until opposite the Cortlandt Street ferry. This proceeding is said to have been necessary, because she could find no place to tie up. While thus drifting, she sounded regularly the "one long and two short" whistles of article 15, which also declares that a vessel towed "may give this signal and shall not give any other." .

The ferryboat Washington, on starting from her slip at Cortlandt street, heard the Rice's signals ahead, and stopped (reversing also) until they sounded well off the starboard bow, then started ahead and saw nothing until the libelant's barge appeared dead ahead and not over 30 or 40 feet away. She was starboard boat in the last tier. Collision followed. The whistles of the ferryboat had been heard on the Rice, and the men on the latter declared that they also saw the Washington herself, when she first approached and then backed away; also that on hearing the ferryboat, and knowing that they were about off the slips, they "hooked up" and were going up river at cautious speed when collision happened.

As the master of the Washington had not seen the tug or tow when he first stopped and reversed for them, he did not know whether the tow was alongside or on a hawser, and admitted on his examination that he might expect either method. The vessels in tow were ordinary barges, with no mechanical sound apparatus. They gave no signals whatever. The trial court found the ferryboat alone at fault; her owners appealed, assigning for error that the conduct of the Senator Rice caused the collision, and the injured barge contributed by making no noise of any kind.

Chauncey I. Clark, of New York City, for appellant.

Robert S. Erskine, of New York City, for appellee Cornell Steamboat Co.

T. Catesby Jones, of New York City, for appellee Ward.

Before ROGERS and HOUGH, Circuit Judges, and LEARNED HAND, District Judge.

HOUGH, Circuit Judge (after stating the facts as above). This appeal has, we think, resulted from indignation over the conduct of the Rice in drifting, tail to, down the North River for nearly three miles, in a dense fog.

[1, 2] We are not concerned to palliate such conduct, but must inquire whether it proximately caused this particular collision. Whether by good or bad navigation the Rice and her tow got in front of the Washington's slip, and made their presence known by the only signal known to the law. The Washington heard, recognized a tow, knew it might be either on a hawser or alongside, and when the sound was sufficiently broad off the bow to give apparent clearance for either kind of tow went ahead, and found the end of a moderately long hawser tow so close aboard that she could not stop in time to avoid collision. Assuming that the Rice had drifted into the Washington's path, she went ahead properly on hearing (and she says seeing) that ferryboat, which came into collision by miscalculating, or rather not guessing right, as to the probable length of the possible hawser tow.

The navigation of the Rice, before she and the Washington began to navigate with reference to each other, is immaterial, unless her position when such related or relative action began caused or contributed to collision. Plainly it did not; and what caused contact was the Washington's error in going faster than would permit her to avoid the kind of tow she admits might have been encountered. Until 500-foot tows are illegal in this harbor, they must be reckoned on. Of course, tugs with such tows owe a corresponding duty of care; but absence of such care must contribute to injury to produce liability.

[3] That the boat in tow could not whistle is admitted. The statute now prevents any other noise, and the reasons for the present written rule are set forth in The City of New York, 49 Fed. 956, 1 C. C. A. 483. Cf. Hughes v. Penn. R. R. Co. (D. C.) 93 Fed. 510, affirmed 113 Fed. 925, 51 C. C. A. 555. Decisions imposing a duty of making signals on a boat left moored or swinging at a pier end in a fog (The Jersey Central, 221 Fed. 625, 137 C. C. A. 349), or declaring it negligence in a tug to let her tow so swing out into the stream from a pier, without producing a noise at the distant and moving end (The Express, 212 Fed. 672, 129 C. C. A. 208; The Bern, 243 Fed. 859, 156

C. C. A. 371), have no application to a tug navigating with a tow. The statutory noise excludes any other.

Decree affirmed, with interest and costs to both appellees, against owners of the Washington.