## THE PATRICIA.

## THE COLUMBIA.

(District Court, E. D. Pennsylvania. January 22, 1924.)

No. 125 of 1923.)

1. **Collision ⊚⟹82(2)—Ferryboat held in fault for collision in fog with lighter moored at end of pier.**

    A ferryboat, making her regular trip across Delaware river from Camden to Philadelphia in a dense fog, came into collision with a lighter moored at the end of a pier discharging cargo, with such force that but for the presence of the lighter she would have struck the pier. She had proceeded at half speed, or four miles an hour, until within about 150 feet from the pier end, and her reversal was then too late to prevent the collision. She also knew that the lighter had been at the end of the pier for some days and had not completed discharging. *Held*, that her speed under the circumstances was negligent and in violation of Inland Rules, arts. 16 and 29 (Comp. St. §§ 7889 and 7903), and that she was in fault for the collision.

2. **Collision ⊚⟹9—Not unlawful for lighter to lie at end of pier in Philadelphia.**

    The custom of the Port of Philadelphia for small vessels to lie at the ends of the piers on some of which bitts are provided for mooring is not in violation of rule 20 of the Harbor Rules and Regulations for the Port of Philadelphia, providing that vessels lying in berths in positions where they extend beyond the line of the pier do so at their own risk and may be held responsible for any damage that may be caused by their projection into the stream, which applies to vessels lying inside the dock.

3. **Collision ⊚⟹71(3)—Position of lighter at end of pier held not a contributory fault to collision.**

    That a lighter, when she was struck by a moving vessel, was lying at the end of a pier discharging, where she did not extend near the sides of the pier so as to obstruct entrance to the ships, *held* not a fault contributing to the collision.

4. **Collision ⊚⟹81—Vessel lying at end of pier not required to sound fog signals.**

    A single small vessel, moored at the end of a pier, where she did not obstruct entrance to the ships, *held* not required to give sound signals during a fog.

In Admiralty. Suit for collision by one Sheridan, owner of the deck lighter Patricia, against the steam ferryboat Columbia. Decree for libelant.

Lewis, Adler & Laws, of Philadelphia, Pa., for libelant.
Barnes, Biddle & Barnes, of Philadelphia, Pa., for respondent.

THOMPSON, District Judge. The Patricia is a wooden deck lighter about 110 feet in length and 32 feet beam. The Columbia is a steam paddle-wheeled ferryboat operated by the West Jersey & Shore Railroad Company between State street, Camden, and Vine street, Philadelphia.

⊚⟹For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

[1] On November 27, 1922, the Patricia, with a cargo of shingles, was towed up the Delaware river and moored to the outer end of Pier 19, North Wharves, Philadelphia, lying bow downstream. Pier 19 is 166 feet in width and 571 feet in length and extends to the port warden's line. It forms the upstream side of an open dock about 300 feet in width, at the lower shore end of which is the slip of the Vine street ferry; the upstream side of the ferry slip being about 107 feet north of the adjoining pier to the south. The Patricia continued to lie at the end of Pier 19 unloading her cargo until the end of working hours on Saturday, December 2, when, unloading not having been completed, she was hauled to the south side of the pier inside the dock and lay there until Monday morning, December 4, when she was hauled around again to the outer end of Pier 19 to continue unloading. She lay about midway of the distance between the corners of the end of the pier and was made fast to the bitts with four five-inch lines, a stern line, a bow line, and ebb and flood tide lines.

On the morning of December 4, there was a dense fog, and about 8 o'clock in the morning, the Columbia, in attempting to find her way into the ferry slip, collided with the Patricia, striking her amidships and causing her substantial damage. Two men were employed upon the lighter, Capt. Sidel and a deck hand. At the time of the collision, the Patricia had a stern light. The deck hand had gone off the boat to attend to an errand, and the master, Capt. Sidel, had gone into the cabin to get his breakfast. No signals of any kind were given immediately prior to the collision, although, before going into the cabin, the master had sounded warnings of his presence by means of striking an iron tub with a stick.

The Columbia, under the same master and with the same gatemen who acted as lookouts, standing just inside the gates which were 10 feet aft of the bow, had made regular trips daily between Camden and the Vine street wharf during the whole time that the Patricia was lying at the end of the pier, and had opportunity to observe, and did observe, that she was unloading her cargo, and knew the unloading was not completed. She had made one previous trip to Philadelphia at 5:40 on the morning of December 4 before the fog gathered, and the lighter had been observed by the master of the Columbia on that trip lying at the side of the pier. While the master testifies that she was lying at the north side of the pier over Sunday, the weight of the evidence is that she was lying at the south side, and I so find.

The Columbia, upon leaving the Camden side in the fog, the tide being ebb, took a course which was intended to bring her north of the dock and opposite the end of Pier 19. She was slowed down to one bell, which is half speed, and, as the fog obscured the view, she sounded her whistle oftener than once a minute; an additional purpose being to ascertain her location as she approached the Philadelphia side through an echo from the superstructure on Pier 19. There was a water plug at the south side of the pier from which water was constantly running, the sound of which was also used as a guide to locate the dock.

After the location was thus ascertained, the usual practice in a fog on an ebb tide was to stop her engines allowing her to proceed under her headway and drift broadside downstream with the tide until opposite the dock, which was to be ascertained by the sound from a bell inside the ferry landing. Upon the morning in question, the Columbia apparently maintained a course which brought her opposite the end of the pier and was still maintaining half speed, which would take her about four miles an hour, when the echo of her whistle was heard by the deck hand stationed at the gate on the port side. The engines were at once stopped. The deck hand immediately thereafter saw the barge through the fog and called to the captain, who signaled to reverse, and, according to the deck hand, "He threw the jingle bell, which meant full speed astern." It was then, however, too late to avoid a collision. The Columbia struck the Patricia amidships with such force as to break through the port side and bulge the planking on the starboard side. I have no hesitation in concluding that, if the barge, which was but little over 30 feet in beam, had not been there, the Columbia would have collided with the pier, as where she struck at right angles was at least 50 feet north of the lower corner of the pier.

The evidence clearly shows that the Columbia was sufficiently apprised of the presence of the lighter to approach the pier with such precaution arising from the special circumstances of the case as is required by article 29 of the Inland Pilot Rules (Comp. St. § 7903). The fog was so dense that, as the respondent's witnesses testified, nothing was visible over 10 feet off the boat. In the exercise of due care, the run from Camden being but a short one, the master should have been able to estimate his distance from the head of the pier where he had reason to expect the Patricia to be lying, to stop his engines before hearing the echo. The echo could be heard when about 150 or 200 feet away, and the captain's testimony proved that a greater distance than that would be required to stop her headway, and that this is the fact is established by the event.

Inland Pilot Rule, art. 16 (Comp. St. § 7889), requires a moderate speed in a fog and a careful regard to existing circumstances and conditions. Under the circumstances and conditions in this case, the Columbia was not justified in maintaining a speed of four miles an hour until the echo was heard. It may have been that, if the whistle had been sounded more frequently, the echo would have been heard sooner. But aside from this, there is no apparent reason why the engines were not stopped before the echo was heard and reversed upon hearing the echo. It is not apparent that observing either of these precautions or both of them would have resulted in any risk to the Columbia, and by observing them the risk of striking the Patricia or the pier would have been averted.

The Columbia should have been going at such rate of speed as to keep her under such control as would make it possible for her to stop when she sighted the barge before she hit it. The Jersey Central, 221 Fed. 625, 137 C. C. A. 349; The P. R. R. No. 5, 181 Fed. 833, 104 C. C. A. 343; The Express, 212 Fed. 672, 129 C. C. A. 208; The Rosaleen, 214 Fed. 252, 130 C. C. A. 622.

296 F.—34

Unless the Patricia was where she should not have been, the presumption is against the Columbia, which was the moving vessel. Graves v. Lake Michigan Co., 183 Fed. 378, 105 C. C. A. 598; The Virginia Ehrman, 97 U. S. 309, 24 L. Ed. 890; The Oregon, 158 U. S. 186, 15 Sup. Ct. 804, 39 L. Ed. 943; The Norwood (D. C.) 215 Fed. 655.

The respondent defends upon two grounds in addition to the denial of negligence: First, that the Patricia was moored at the end of a pier where she had no right to be; and, second, that she failed to give any warning of her presence.

[2] Anticipating the first of these defenses, the libelant offered evidence from which I find as a fact that it is the local custom in the port of Philadelphia for barges and other small craft to lie at the ends of the piers along the water front. It is also a fact that at this particular pier, bitts were provided at the end for this very purpose, and the Patricia was placed there in order to discharge her cargo.

The respondents offered in evidence rule 20 of the Harbor Rules and Regulations for the Port of Philadelphia promulgated by the board of commissioners of navigation for the river Delaware and its navigable tributaries under the authority of the Pennsylvania Act of June 8, 1907, P. L. 496, § 4 (Pa. St. 1920, § 21796), which is as follows:

"Vessels lying in berths in the Port of Philadelphia, in positions where they extend beyond the line of the pier, do so at their own risk, and may be held responsible for any damage that may occur by reason of their projecting into the stream."

This regulation obviously, by its terms, applies to vessels lying inside the dock. As its provisions are penal in their nature, it must be strictly construed and, therefore, does not apply to a vessel lying and discharging cargo at the end of a pier. The Allemania, 231 Fed. 942, 146 C. C. A. 138; The Chauncey M. Depew, 139 Fed. 236, 71 C. C. A. 362.

[3] The statute under consideration in the cases of the Allemania and the Depew was enacted as part of the charter of the city of New York and in its terms prohibited a vessel from lying in the position occupied by the Patricia. But the rule offered in this case, if strictly construed, contains no such meaning. Moreover, the Patricia was not lying where she obstructed navigation of vessels properly navigated for the purpose of entering the dock. She did not extend beyond the sides of the pier. There was ample space between her bow and stern and the sides of the pier for a vessel entering the docks on either side to clear her, and she was struck because the course of the Columbia was directed for the center of the pier. It is concluded, therefore, that she was where she had a right to be.

[4] As to the respondent's second contention that her master should have given warning signals, the libelant's reply is that there is nothing in the Pilot Rules requiring a moored vessel to give sound signals during a fog and that it has been held that such signals would mislead other vessels to suppose that an anchored vessel was giving the signal. It has been held by the courts of the Second circuit that, when there is more than a single vessel at a pier head, thus obstructing the channel to vessels passing up or down the stream, and fog signals signify the approach of another vessel, there should be sounded some warning of

the presence of the obstructing vessel, such as beating a pan or blowing a mouth horn or using a watchman's rattle or a megaphone. The Jersey Central, supra.

An examination of the cases demonstrates that the duty of giving sound signals has been applied only in cases where the vessels were tied side by side extending into and obstructing the navigation of a stream. In The Kennebec, 108 Fed. 300, 47 C. C. A. 339, boats were moored one to another obstructing the fairway to the extent of 157 feet beyond the end of the pier and taking up a large part of a narrow channel. In Wright & Cobb Lighterage Co. v. New England Navigation Co.. 204 Fed. 762, 125 C. C. A. 129, the vessels thus tied up projected over 300 feet beyond the end of the pier, and in that case the court announced that its opinion in P. R. R. No. 5, supra, was not inconsistent with the cases in which it was held that fog signals should be given, as in that case a single boat was tied up where it was to be expected that a boat might be found lying at any time. So far as I have been able to find, there is no decision of the courts in this circuit requiring a sound signal to be given by a single vessel lying as the Patricia was, and the cases in the Second circuit do not support the respondent's contention.

It is held that the collision resulted solely from the fault of the Columbia, and a decree will be entered accordingly, including a reference to a commissioner to find the damage, unless the proctors for the parties shall agree upon the amount thereof, and including costs to the libelant.