PURE OIL CO. v. THE FRED B. ZIGLER et al.

G. B. ZIGLER CO. v. THE ELLEN et al.

THE P. O. 1201.

THE P. O. 1202.

THE Z–EIGHT.

THE Z–71.

THE F B Z–73.

Nos. 1392, 1597.

United States District Court
E. D. Louisiana, New Orleans Division.
May 29, 1952.

122

Deutsch, Kerrigan & Stiles, Harry F. Stiles, New Orleans, La., for libelant Pure Oil Co.

Lemle & Kelleher, Selim B. Lemle, New Orleans, La., Benckenstein, Brown & Wells, George E. Duncan, Beaumont, Tex., for G. B. Zigler Co.

Dart, Guidry & Price, Henry J. Read, New Orleans, La., for Industrial Marine Service, Inc.

WRIGHT, District Judge.

This litigation arises out of a collision in the Mississippi River near Baton Rouge on January 29, 1947 when a tow of four loaded oil tank barges operated by the G. B. Zigler Company, being towed down the Mississippi River by two tugs of that company, was struck by a tow consisting of one loaded and one light tank barge belonging to the Pure Oil Company which were being towed by the M/V Ellen, operated by the Industrial Marine Service, Inc. The litigation was initiated by a libel filed against the G. B. Zigler Company and the Zigler tugs, the Fred B. Zigler and Z-Eight, by the Pure Oil Company. The Zigler Company claimed its tugs and filed a petition under Admiralty Rule 56 against the M/V Ellen. The G. B. Zigler Company then filed a libel against the M/V Ellen and Industrial Marine Service, as owner of the Ellen. Industrial Marine Service claimed her and filed a petition under Admiralty Rule 56 against the tugs Fred B. Zigler and Z-Eight. Industrial Marine Service also filed a cross-libel and a cross-complaint against the Tugs Fred B. Zigler and Z-Eight and the G. B. Zigler Company. The proceedings have been consolidated for trial with separate decrees to be rendered in each case.

After careful consideration of the evidence, the briefs and argument of counsel representing the various parties herein, the court makes the following findings of fact and conclusions of law.

### Findings of Fact

1. On January 29, 1947 a flotilla consisting of two tugs and four barges bareboat chartered to and operated by G. B. Zigler Company was proceeding down the Mississippi River from Gibson Landing, Louisiana, to Monroe, Louisiana. This flotilla consisted of the single screw diesel tugs Fred B. Zigler and Z-Eight, each approximately 75 gross tons and approximately 65 feet long, 20 feet wide, 6½ feet depth, and each powered with a 400 horsepower engine. The barges in the flotilla were Z-70, Z-71, FBZ-72 and FBZ-73, all certified tank barges each approximately 205 feet long, 40 feet wide and 10 feet deep. Each of the barges had a full petroleum cargo. These four barges were made up to each other with ratchets and crosslines as one rigid unit, two strings of two barges each. On the starboard side, the lead barge was the FBZ-73 and the second barge was Z-71. On the port side the lead barge was FBZ-72 and the second barge was Z-70. The two tugs were made up to the stern of the tow abeam of each other, the tug Fred B. Zigler on the starboard and the tug Z-Eight on the port side. Each tug was secured to the barge ahead but not to each other. The two tugs were approximately fifteen feet apart.

2. Each of the tugs was in charge of a separate master and carried a crew consisting of a full complement of seamen. There were two river pilots on the flotilla who stood equal watches. The tug Fred B. Zigler was in charge of navigation of the flotilla with the river pilots taking their positions and standing their watches aboard that tug. All of the steering was accomplished from the Fred B. Zigler which had sufficient rudder power to maneuver the flotilla. The rudder of the tug Z-Eight was kept amidship and a helmsman was there to alter the helm on order of the river pilot from the tug Fred B. Zigler and also to transmit any orders which the river pilot might want executed in the engine room of the tug Z-Eight. An engineer was on watch in the engine room of each of the tugs to execute all engine orders transmitted from the tugs' respective wheelhouses to the engine room by means of a gong and a "nigger" whistle.

3. At approximately 3:00 P.M. on the afternoon of January 29, 1947 under conditions of excellent visibility the Zigler flotilla passed under the middle span of the Mississippi River bridge just above Baton Rouge, Louisiana, and thereupon laid a course for Limerick Light on the west bank of the river approximately 4½ miles south of the bridge. There is a straight reach of the river from the bridge to Limerick Light and the river is approximately 2000 feet wide with slight and immaterial variations for the entire reach. On the day in question there was a current in the river approximately five miles an hour. The Zigler flotilla in order to maintain its steerage way was proceeding through the water at the rate of five miles per hour so that the speed of the flotilla over the bottom was approximately ten miles per hour.

4. Approximately two miles south of the bridge and in the vicinity of a dock maintained on the west bank of the river by the Pure Oil Company the Zigler flotilla was in collision with a flotilla consisting of one tug and two oil tank barges, one light and one loaded. This tug was the M/V Ellen, owned and operated by the Industrial Marine Service, Inc. The two barges were the P. O. 1201 and P. O. 1202 owned by the Pure Oil Company. As a result of the collision the Zigler barges, FBZ-73 and Z-71 in the Zigler flotilla and both barges in the Ellen flotilla were damaged.

5. The M/V Ellen is a steel river towboat having a length of 122.8 feet over all, beam of 30 feet, depth of 4.8 feet and is powered by two 615 horsepower Cooper-Bessemer Diesel engines. The barges P. O. 1201 and P. O. 1202 are steel tank barges of identical dimensions and construction having a length of 220 feet, beam of 40 feet, depth of 9.5 feet and a capacity of 13,294.48 barrels each.

6. On the day of the collision the barge P. O. 1202 was lying at the Pure Oil Dock on the westerly bank of the Mississippi River being loaded. The barge was inside the dock, that is, between the dock and the west bank of the river. The dock was nothing more nor less than four clusters of piling approximately one hundred feet out in the river from and paralleling its west bank. The piling were numbered 1 to 4 from upstream to downstream, the distance from cluster 1 to 4 being approximately 280 feet. Between the middle clusters of piling was a loading platform on which were pipe lines leading to shore tanks.

7. The tug Ellen with the barge P. O. 1201 made up ahead to her bow approached the Pure Oil Dock for the purpose of pulling out the then loaded barge P. O. 1202 and replacing it with the light barge P. O. 1201. The Ellen, pushing the barge P. O. 1201, went in between the Pure Oil Dock and the west bank of the river, made fast the face of light barge P. O. 1201 to the face of loaded barge P. O. 1202 and then went astern in order to pull the loaded barge P. O. 1202 out from the dock.

8. When the upstream end of barge P. O. 1202 had cleared the lower end of the dock, the Ellen went ahead on her engine and began angling out into and upriver to obtain searoom for the topping maneuver in which she was about to engage. This maneuver consisted of (1) letting go the starboard coupling line between the starboard forward corner of light barge P. O. 1201 and the starboard after corner of loaded barge P. O. 1202, while holding the coupling line between the corresponding

port corners of those barges; (2) then coming ahead and slightly to starboard so that the loaded barge would pivot around and alongside the light barge. This manuver was undertaken while coming upstream in order that the current might aid the pivoting motion of the loaded barge. It was while the Ellen flotilla was performing this topping maneuver that the collision occurred, the forward port corner of light barge P. O. 1201 coming in contact with the Zigler flotilla at the coupling on the starboard side between barges FBZ-73 and Z-71. The head of the Zigler flotilla had been turned slightly to port and the whole flotilla was, in effect, sliding down the river with the current now on its port side when the collision occurred. After the light barge came in contact with the Zigler flotilla the loaded barge P. O. 1202 which had been dangling off the forward port corner of the light barge came across the face of the light barge and also struck the Zigler flotilla.

9. There is hopeless confusion in the testimony as to the exact site of the collision, the Zigler witnesses placing it in the middle of the river, the Ellen witnesses placing it very close to and slightly south of the Pure Oil Dock. One Dorr, an apparently disinterested eyewitness, who was aboard a tug moored at the Pure Oil Dock testified that the collision occurred approximately one hundred fifty feet out in the river from some barges which were moored two abreast to the riverside of the Pure Oil Dock.

10. While it is difficult in view of this conflict in the testimony to find with any degree of certainty the exact site of the collision, it is probable that the collision occurred near the southern end of the Pure Oil Dock between two hundred and four hundred feet out in the river. This finding is predicated primarily on the testimony of the disinterested witness, Dorr, and the fact that the witnesses concerned with the navigation of the Zigler flotilla testified that after coming under the middle span of the bridge at Baton Rouge a course was laid for Limerick Light. Such a course, if held, would place the Zigler flotilla approximately three hundred fifty feet off the Pure Oil Dock at the time in question.

11. Witnesses for the Zigler and Ellen flotillas all admit that they were in sight of each other for two miles before the accident happened. Unfortunately, however, neither flotilla did anything about keeping out of the other's way until collision was inevitable. In spite of seeing the Zigler flotilla coming down the river with a five mile current and knowing that it would have to pass on the west side of the river because of large vessels which were anchored on the east side thereof south of the Pure Oil Dock, the Ellen continued with its ungainly topping maneuver which involved the swinging of a 220 foot barge around the end of another 220 foot barge. Because of the presence of the barges made up two abreast and moored to the riverside of the Pure Oil Dock, this maneuver had to be performed farther out in the river than usual, thereby taking up what turned out to be precious river space. It is true the testimony shows that the Ellen reversed her engine prior to the collision but it is also true that the flotilla's forward motion through the water was not substantially affected by this engine change.

12. The testimony of the witnesses on the Zigler flotilla is so confused it is difficult to ascertain what action in avoidance was taken by it. Rogers, the river pilot in charge of the navigation of the Zigler flotilla, testified that on coming within a half mile of the Ellen he blew two blasts to indicate a starboard to starboard passage but kept his rudder amidship. He testified further that as the danger of collision approached he ordered the engines reversed on both tugs, the Fred B. Zigler and the Z-Eight. He states that the engines were reversed in accord with his order. The master of the Fred B. Zigler and the engineer on watch in the Fred B. Zigler both testified that the engine in the Fred B. Zigler was actually going ahead at the moment of the collision and no orders to reverse had been given or received prior thereto. The mate on watch on the Z-Eight testified that Rogers instructed him to reverse the engine on the Z-Eight and place the rudder hard to port, both of which

he did. He further testified that the engine of the tug Fred B. Zigler was going ahead at the moment of collision. The master of the Z-Eight testified when he came upon the bridge a few moments before the collision the steering wheel of the Z-Eight was tied in place, apparently in the midship position.

13. From this welter of confusion it appears that, in spite of the testimony of Rogers and possibly against his orders, at the moment of collision and for some time prior thereto the rudder of the tug Fred B. Zigler was amidship, the rudder of the Z-Eight was hard to port, the engine of the Fred B. Zigler was going ahead, the engine of the Z-Eight was backing. The combined effect of the left rudder of the Z-Eight and the reciprocal action of the engines of the two tugs was to throw the head of the flotilla to port and the stern to starboard. It is possible that if the engine of the tug Fred B. Zigler had been reversed at the time the engine of the Z-Eight was reversed and the rudders of both tugs kept amidship the collision would not have occurred. It was this canting maneuver which threw a substantial part of the flotilla off its course line to starboard where the danger of collision lay. It must be remembered that this flotilla was approximately five hundred feet in length and in turning pivoted very close to the forward end.

### Conclusions of Law

1. Under the facts of this case the Rule of Special Circumstances must be applied. United States Lines Co. v. The Ocean Vagrant, 2 Cir., 179 F.2d 495; Merritt, Chapman Scott Corp. v. Texas Company, 2 Cir., 98 F.2d 719.

2. The collision was caused by the mutual fault of the M/V Ellen and the tug Fred B. Zigler.

3. The faults of which the tug Fred B. Zigler was guilty are as follows:

(1) Proceeding full speed ahead after laying a course for Limerick Light and knowing that course would take the flotilla dangerously close to the Pure Oil Company Dock which was not only congested at the time but about which the Ellen flotilla was maneuvering.

(2) Lack of proper communication and coordination with the tug Z-Eight.

(3) Failure to reverse the engine in the tug Fred B. Zigler, particularly after ordering the Z-Eight to reverse hers.

(4) Failure of the tug Fred B. Zigler to direct her course to port after indicating such a course by the two blast signal.

4. The faults of the M/V Ellen are as follows:

(1) Proceeding with the topping maneuver in the face of the oncoming Zigler flotilla. The P. R. R. Tug #35, 2 Cir., 5 F.2d 1012; Fulton-Nanuet, U.S.D.C.S.D.N.Y., 1928 A.M.C. 1563.

(2) Failure to reverse her engine before collision became inevitable.

5. Pure Oil Company, owner of barges P. O. 1201 and P. O. 1202 is entitled to recover the full amount of its damages from the G. B. Zigler Company. The Sterling, 1882, 106 U.S. 647, 1 S.Ct. 89, 27 L.Ed. 98; The Connecticut, 1880, 103 U.S. 710, 26 L.Ed. 467; The City of Hartford, 1877, 97 U.S. 323, 24 L.Ed. 930; The Alabama, 1875, 92 U.S. 695, 23 L.Ed. 763; The Eugene F. Moran, 212 U.S. 466, 29 S.Ct. 339, 53 L.Ed. 600. The G. B. Zigler Company is entitled to recover one-half of this amount from Industrial Marine Service, Inc. The Ira M. Hedges, 1910, 218 U.S. 264, 31 S.Ct. 17, 54 L.Ed. 1039; Erie R. R. Co. v. Erie & Western Transportation Co., 1907, 204 U.S. 220, 27 S.Ct. 246, 51 L.Ed. 450; The Mariska, 7 Cir., 1901, 107 F. 989; The Bern, 2 Cir., 1917, 243 F. 859; Randall & McAllister v. Goodwin-Gallagher Sand & Gravel Corp., 2 Cir., 1932, 61 F.2d 889; United States v. Farr Sugar Corp., 2 Cir., 1951, 191 F.2d 370.

6. The G. B. Zigler Company is also entitled to recover one-half of its own damages from the Industrial Marine Service, Inc.

Let decrees be prepared in accordance herewith.